[No. 13192.   Department One. — April 30, 1890.]

BULWER CONSOLIDATED MINING COMPANY, RESPONDENT, v. STANDARD CONSOLIDATED MINING COMPANY, APPELLANT.

QUIETING TITLE — MINERAL LANDS — QUARTZ VEINS — PLEADING — ANSWER — ADMISSIONS — IMMATERIAL ISSUES. — In an action to quiet title to a mining claim containing veins and lodes of rock in place, an answer which expressly admits that plaintiff is the owner and entitled to the possession of the land described in the complaint, and of all veins, lodes, and ledges, throughout their entire depth, the tops or apexes of which lie inside of plaintiff's surface lines extended downward vertically, and expressly disclaims any estate therein adverse to plaintiff, and denies that defendant ever made such adverse claim, and sets up as new matter that defendant owns a certain wholly distinct quartz claim adjoining plaintiff's claim, and owns a particular vein which has its apex therein, which it

claims the right to follow downward into the claim of plaintiff, — presents no defense to the complaint, and tenders no material issue. And the same is true of an answer of the plaintiff to a cross-complaint of the defendant containing similar allegations and denials.

ID. — EFFECT OF DISCLAIMER — JUDGMENT QUIETING TITLE WITHOUT COSTS. — The only effect of a disclaimer by the defendant of an adverse claim or interest in the lands described in the complaint, in an action to quiet title, is to entitle the plaintiff to judgment quieting his title to such land, without costs.

ID. — NEW MATTER — COUNTERCLAIM — CROSS-COMPLAINT — DISTINCT LAND AND VEIN. — When the new matter alleged in an answer or cross-complaint of defendant relates to a distinct piece of land from that described in the complaint, and to a quartz vein which is no part of and does not belong to the land and veins described in the complaint, although it may extend downward into plaintiff's land, it does not conflict with any alleged right of plaintiff to the quartz-mining claim and veins described by him, or constitute any defense or counterclaim to the complaint, and may be stricken from the answer as irrelevant; nor is it proper subject-matter of cross-complaint, because not affecting the property to which the action relates. Even if the defendant had claimed ownership of, or any less estate or interest in, the lands described in the complaint, there would be no proper occasion for a cross-complaint.

ID. — ADVERSE CLAIM TO SAME QUARTZ VEIN — PLEADING — FINDINGS. — In order to try title to a particular quartz vein, the location of the apex of which is disputed between adjoining claimants of quartz-mining ground, it is necessary that the pleadings should show that the vein claimed by defendant as having its apex in his mining ground is the same vein claimed by plaintiff to have its apex in the mining ground of plaintiff. If the vein is called by different names by each party, and alleged to be in the distinct ground of each, without any allegation or intimation in the pleadings of either party that these different names and descriptions are intended to designate the same vein, there is no issue presented to try as to the location of the vein, and findings thereupon are outside of the issues.

ID. — IMMATERIAL ISSUE AS TO TIME OF ADVERSE CLAIM — FINDINGS. — If the answer claims an adverse interest in the land described in the complaint in a suit to quiet title, a denial that the defendant made such adverse claim before the commencement of the action is immaterial, and no finding need be made thereon. Nor need such finding be made upon an answer which denies ever having made any adverse claim, if the judgment merely quiets title without costs.

ID. — OBJECT OF ACTION — PLEADING — AVERMENT OF ADVERSE CLAIM. — The object of sections 738 and 739 of the Code of Civil Procedure is to enable the plaintiff, in an action to determine an adverse claim, to dispel it as a cloud on his title; and the only purpose of an averment of adverse claim is to notify the defendant of the nature of the action, and that he is required to set forth and litigate any adverse title he may have, or to disclaim it either expressly or by default. But such averment does not tender a material issue to be tried, and only affects the question of costs.

The only material issues tendered by a complaint in such action relate to the title to the real property described in the complaint.

ID. — Inconsistent Findings outside of Issues — Immaterial Issues — Collateral Issues — Oral Pleadings. — The fact that findings made upon issues not tendered by the pleadings are inconsistent with each other is not ground for reversing the judgment, if no material issues are tendered by the pleadings. Findings upon collateral issues as to probative facts may be material, as having an evidentiary bearing upon material issues tendered by the pleadings, but cannot be material if no such material issues are tendered. There can be no substitution of oral pleadings, of which there is no record, for the written allegations of the parties.

Findings — Admitted Facts. — There is no necessity of a finding upon agreed facts admitted by the pleadings.

Appeal from a judgment of the Superior Court of Mono County.

The facts are stated in the opinion.

*P. Reddy*, and *C. A. Schuman*, for Appellant.

The findings, being contradictory, indefinite, and uncertain, are insufficient to support the judgment. (*Learned* v. *Castle*, 78 Cal. 454; *Pfister* v. *Dascey*, 65 Cal. 403, 404.) To constitute a cause of action under section 738 of the Code of Civil Procedure, it must be alleged and proved that defendant made an adverse claim before the commencement of the action. (*Pfister* v. *Dascey*, 65 Cal. 403, 404.) The conclusions of law are erroneous. A locator or patentee of a mining claim is not entitled to any extra lateral right where the vein departs in its strike or course through the side line of his claim. (*Iron Silver Mining Co.* v. *Elgin M. & S. Co.*, 118 U. S. 196.) The cross-complaint and answer thereto were unnecessary. (*Miller* v. *Luco*, 80 Cal. 257.)

*Lloyd & Wood*, and *Richard S. Minor*, for Respondent.

The cross-complaint and answer thereto raised issues as to the existence, identity, and location of the West Bullion lode location. An immaterial conflict in the findings is not ground of reversal. (*Hope* v. *Barnett*, 78 Cal. 9.) An erroneous finding will not warrant reversal,

if the other findings show that the judgment is right. (*Duryea* v. *Boucher*, 67 Cal. 141.) Section 738 of the Code of Civil Procedure embraces every description of claim whereby the plaintiffs might be deprived of their property, or its title clouded, or its value depreciated. (*Head* v. *Fordyce*, 17 Cal. 149.) Findings should be confined to the issues. (*Gould* v. *Stafford*, 77 Cal. 67.) A finding on the adverse claim was immaterial and irrelevant, because admitted by the pleadings. (*Swift* v. *Muygridge*, 8 Cal. 445; *Anderson* v. *Black*, 70 Cal. 226; *Pomeroy* v. *Gregory*, 66 Cal. 572; *Bradbury* v. *Cronise*, 46 Cal. 287; *Knowles* v. *Seale*, 64 Cal. 377; *Hanson* v. *Fricker*, 79 Cal. 283; *Withers* v. *Jacks*, 79 Cal. 297.) A finding against an admission of the pleadings must be disregarded. (*In re Doyle*, 73 Cal. 570, 571; *Fisher* v. *Slattery*, 75 Cal. 329.) If a vein crosses a side line on its strike, it becomes an end line. Where the dip is substantially at right angles with its strike, the owner may follow it outside of his vertical side lines extended downward, and confined between vertical planes drawn downward through the end lines extended. (*Wolfley* v. *Hitchcock*, 3 Col. 533; *Johnson* v. *Buell*, 9 Min. Rep. 502; *Flagstaff Co.* v. *Tarbet*, 9 Min. Rep. 607; *McCormick* v. *Nurnes*, 9 Min. Rep. 506; *Iron S. Co.* v. *Cheeseman*, 9 Min. Rep. 552; *Tombstone M. Co.* v. *Way Up M. Co.*, 1 Ariz. 426; *Eureka Co.* v. *Richmond Co.*, 9 Min. Rep. 578, 634; *Mining Co.* v. *Tarbet*, 98 U. S. 463.)

VANCLIEF, C.— Action to quiet title to a mining claim in Mono County, brought under section 738 of the Code of Civil Procedure. Each party is a California corporation.

The complaint is in the usual form of complaints under said section, and describes a strip of land 1,188 feet in length, containing two acres, "known as the Ralston No. 1 north mine or vein, . . . . being mineral entry No. 48 in the series of the land-office at Bodie, in said

state, designated by the surveyor-general as lot No. 44," of which the plaintiff alleges that it is the owner, and in possession, " with exclusive right of possession and enjoyment of all land included within the exterior lines of said survey, and of 1,188 linear feet of said Ralston No. 1 north mine or vein, lode, or deposit, for the length hereinbefore described, throughout its entire depth, although it may enter the land adjoining, and also of all other veins, lodes, ledges, or deposits, throughout their entire depth, the tops or apexes of which lie inside the exterior lines of said survey at the surface extended downward vertically, although such veins, lodes, ledges, or deposits in their downward course may so far depart from a perpendicular as to extend outside the vertical side lines of said survey; that the defendant makes and asserts a claim adverse to the plaintiff for an estate and interest in said real property, mine, mining claim, and location; that the claim of the said defendant is without any right whatever; and that the said defendant has not any right, title, or interest whatever in said lands and premises, or any part thereof."

In its answer, the defendant " admits that plaintiff is the owner, and in possession and entitled to the possession, of that certain mining claim and location described in said complaint as the 'Ralston No. 1 north mine or vein,' but denies that plaintiff is, or ever was, the owner, or that it has, or ever had, the exclusive right of possession or enjoyment of all, or any, of the land described in the complaint, except the surface included within the lines of said location, and all veins, lodes, ledges, if any such there be, throughout their entire depth, the tops or apexes of which lie inside of such surface lines extended downward vertically."

The answer then avers that the defendant owns and possesses a piece of land, being mineral entry No. 46 in the land-office at Bodie, and designated by the surveyor-general as lot No. 46, being 1,500 feet in length, and

containing 15.44 acres, "commonly known as West Bullion lode," and describes the exterior boundaries thereof. The answer then further alleges that this last-mentioned claim "adjoins the mining claim of the plaintiff described in the complaint, and lies on the easterly side thereof," and that defendant has the exclusive right of possession and enjoyment of all the surface included within the lines of this last-described location, "and of all veins, lodes, and ledges, throughout their entire depth, the tops or apexes of which lie inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular line in their course downward as to extend outside the vertical side lines of such surface location; . . . . that within said West Bullion lode mining claim there is a vein commonly known and designated as the *west vein* of the West Bullion lode location, which vein lies near the western boundary line of said West Bullion lode mining claim, said boundary line being the west side line of said West Bullion lode location, and the east side line of said Ralston No. 1 north mining claim; that the top or apex of said *west vein* of the said West Bullion lode location lies inside the surface lines of said West Bullion lode location, extended downward vertically; that said *west vein* of said West Bullion lode location, at some points thereon, so far departs from a perpendicular in its course downward as to extend outside the vertical side lines of defendant's said surface location, and to and within the vertical side lines of plaintiff's said surface location; that defendant claims the right to follow, work, possess, and enjoy the said *west vein* of said West Bullion lode location throughout its entire depth, and the right to follow, work, possess, and enjoy all veins, lodes, and ledges, throughout their entire depth, the tops or apexes of which lie inside the surface lines of defendant's said location, extended downward vertically, although such veins, lodes, or ledges may in their courses

downward extend outside of the vertical side lines of defendant's said mining claim, and into the land and mining location described in plaintiff's complaint herein; that defendant does not make or assert, and has never made or asserted, any claim adverse to plaintiff for any estate or interest in the mine, mining claim, or location described in the complaint, or any claim of right to enter upon the surface of the same, or any claim of right to enter upon any portion thereof, except the right hereinbefore alleged, and claimed to follow, work, possess, and enjoy the veins, lodes, and ledges so belonging to defendant, as aforesaid. And defendant denies that its said claim is without right, and denies that the defendant has not any right, title, or interest in the lands described in said complaint."

At the time of filing its answer the defendant also filed what it denominates a cross-complaint, which is substantially the same as its answer in all respects, except the addition thereto of the following two paragraphs and the prayer, viz.: —

"That plaintiff makes and asserts a claim adverse to defendant for some estate or interest in said West Bullion lode location, and particularly in said west vein thereof, and claims and asserts that the same, or some part thereof, is part of the said mine or mining claim of plaintiff.

"That the claim of said plaintiff is without any right whatever, and the said plaintiff has no right, title, or interest whatever in said West Bullion lode mining claim, or in said west vein lode of said West Bullion lode location, or any part thereof."

Then follows the usual prayer in complaints to quiet title.

In plaintiff's answer to the cross-complaint it is admitted "that defendant is the owner and in possession of that certain mining claim and location described in said cross-complaint as the 'West Bullion lode'; but denies

that said defendant is, or ever was, the owner, or that it has, or ever had, the exclusive right of possession or enjoyment of all, or any, of the land included within the exterior lines of the survey described in said cross-complaint, except the surface included within the lines of said location, and all veins, lodes, and ledges, if any such there be, throughout their entire depth, the tops or apexes of which lie inside of such surface lines extending downward vertically.

"Plaintiff denies that within said West Bullion lode mining claim there is a vein commonly known and designated as the west vein of the West Bullion lode location, or otherwise designated, which vein, or any vein, lies near the western boundary line of the said West Bullion lode mining claim. Plaintiff denies that the top or apex of said west vein of the said West Bullion lode location lies inside of the surface lines of said West Bullion lode location, extending downward vertically."

The answer to the cross-complaint then repeats the substance of the complaint as to plaintiff's right and title to the Ralston No. 1 north mine, and adds thereto the following:—

"That said Ralston No. 1 north mine or vein adjoins the mining claim of the defendant described in said cross-complaint, and lies on the westerly side thereof; that within the said Ralston No. 1 north mine or mining claim, there is a vein commonly known and designated as the east vein of the Ralston No. 1 north mine location, which vein lies near the eastern boundary line of said Ralston No. 1 north mine or mining claim, said boundary line being the east side line of said Ralston No. 1 north mining claim, and the west side of the said West Bullion lode location; that the top or apex of the said east vein of the said Ralston No. 1 north mining claim lies inside of the surface lines of said Ralston No. 1 north mining-claim location, extending down-

ward vertically; that said east vein of said Ralston No. 1 north mining-claim location, at some points thereon, so far departs from a perpendicular in its course downward as to extend outside of the vertical side lines of plaintiff's said surface location, and to and within the vertical side lines of defendant's said surface location; that plaintiff claims the right to follow, to work, to possess, and enjoy the said east vein of said Ralston No. 1 north mining location throughout its entire depth, and the right to follow, work, possess, and enjoy all veins, lodes, and ledges, throughout their entire depth, the tops or apexes of which lie inside of the surface lines of plaintiff's said location, extending downward vertically, although such veins or ledges may in their courses downward extend outside of the vertical side lines of plaintiff's said mining claim, and into the land and mining location described in defendant's cross-complaint herein; that plaintiff does not make or assert, and has never made or asserted, any claim adverse to defendant for any estate or interest in the mine, mining claim, or location described in the cross-complaint, or any claim of right to enter upon the surface of the same, or any claim of right to enter upon any portion thereof, except the right hereinbefore alleged and claimed, to follow, work, or possess and enjoy the veins, lodes, and ledges so belonging to the plaintiff, as afore-said.    And plaintiff denies that its said claim is without right, and denies that plaintiff has not any right, title, or interest in the lands described in said cross-complaint."

It is apparent from these pleadings that all the lands described therein are mineral lands, containing veins and lodes of rock in place, and that such right and title as either party has thereto was acquired under and depend upon the provisions of chapter 6 of title 32 of the Revised Statutes of the United States.    Upon this assumption it is clear that defendant's answer to the complaint neither raised nor tendered any material issue.

It expressly admits that plaintiff is the owner, in possession and entitled to the possession, of the land described in the complaint, and of all veins, lodes, and ledges, throughout their entire depth, the tops or apexes of which lie inside of plaintiff's exterior surface lines extended downward vertically; and it expressly disclaims any estate or interest therein adverse to the plaintiff. It is true that it denies that it ever made any such adverse claim; but in view of section 739 of the Code of Civil Procedure, this issue, in connection with the disclaimer by the defendant, is immaterial, since a decision of it either way would not affect the judgment; that is to say, when, in an action to quiet title to land, the defendant disclaims any interest or estate in the premises, it is immaterial whether or not he had ever before claimed an interest or estate therein adversely to the plaintiff; for in either event the plaintiff would be entitled simply to a judgment quieting his title, *without costs.*

The new matter alleged in the answer relates solely to a distinctly different piece of land from that described in the complaint, and to a vein (the "west vein") having its apex therein, and therefore being a part of it, and being no part of the land described in the complaint, although in its course downward it may pass through the vertical plane extended down from the east side line of plaintiff's land. (U. S. Rev. Stats., sec. 2322.) Conceding the truth of all this new matter, it does not conflict with any alleged right of the plaintiff, or constitute any defense or counterclaim to any matter of the complaint, and therefore might have been stricken from the answer as irrelevant.

The cross-complaint of the defendant relates solely to the same land, and "west vein" therein, which is the subject of the new matter in the answer, and is wholly inappropriate, for the following reasons: 1. The affirmative relief sought by it does not affect "the property to which the action [in which it is filed] relates" (Code

Civ. Proc., sec. 442), as the action only relates to the ownership and right to the possession, use, and enjoyment of the surface of the land described in the complaint, and of all veins, lodes, ledges, and deposits, throughout their entire depth, the tops or apexes of which lie inside the exterior surface lines extended downward vertically, although such veins, lodes, ledges, or deposits in the downward course may so far depart from a perpendicular as to extend outside the vertical planes of the side lines, and not to the land described in the cross-complaint, or to the "west vein," or any other vein, lode, ledge, or deposit the top or apex of which lies within vertical planes of the side lines of the land described in the complaint; 2. Even if the defendant had claimed ownership of, or any less estate or interest in, the land, veins, lodes, or ledges described in the complaint, there would have been no proper occasion for a cross-complaint ( *Wilson* v. *Madison*, 55 Cal. 5; *Miller* v. *Luco*, 80 Cal. 257; *Germania B. & L. Ass'n* v. *Wagner*, 61 Cal. 354); and the learned counsel for the cross-complainant, in his reply brief, admits that " both the cross-complaint and answer thereto were unnecessary." It does not appear, however, that the plaintiff made any objection to the cross-complaint, or to the new matter pleaded in the answer.

Conceding that, under the circumstances, it was admissible to try the case made by the cross-complaint and answer thereto, it seems difficult to determine what were the material issues to be tried. Each party had expressly admitted the surface boundary lines of the land as claimed by the other. Each party expressly admitted that the other was entitled to all veins, lodes, and ledges, throughout their entire depth, the tops or apexes of which lie within its vertical side lines, although in their course downward they might pass through the vertical side lines of the land of the other party. Each party admitted that the land of the plaintiff and that of defend-

ant adjoined each other on the surface. Each party expressly disclaimed any interest or estate in the surface of the land claimed by the other, or in any vein, lode, or ledge the top or apex of which was within the vertical side lines of the land of the other, however far such veins, lodes, or ledges might pass outside of such vertical side lines and into the space between the vertical side lines of the land of the other party. The cross-complaint alleges that, within the land of the defendant, and near the western boundary side line thereof, there is a vein called and known as "the west vein of the West Bullion lode location," the top or apex of which lies inside of the vertical side lines of defendant's land, which, at some points below the apex, extends outside of defendant's vertical side lines of the plaintiff's land; and that plaintiff claims this "west vein," or some part thereof, adversely to the defendant.

The answer of plaintiff denies all these allegations of the cross-complaint as to the "west vein of the West Bullion lode," and alleges that, within the plaintiff's land, and near the eastern boundary line thereof, there is a vein commonly known and designated as the "east vein of the Ralston No. 1 north mine location," the top or apex of which lies inside of the surface lines of plaintiff's land, and which, at some points thereon, in its course downward, extends outside of the vertical side lines and within the vertical side lines of defendant's surface location.

So far as any information is to be derived from the pleadings, it appears expressly that the "west vein of the West Bullion," and the east vein of the Ralston No. 1, are distinct veins, for they are designated by distinctly different names, and are described as being located in different places, there being no dispute as to the true location of the western boundary line of the Bullion location, or as to the eastern boundary line of the Ralston No. 1 on the surface. These lines are distinctly

described in the pleadings of the respective parties, by courses, distances, and monuments, and it is expressly agreed that they coincide; that is, that the western boundary line of the West Bullion is the eastern boundary line of the Ralston No. 1.   It is nowhere alleged or intimated in the pleadings of either party that these different names and descriptions are intended to designate the same vein.   Why not as well contend that, by the different names and descriptions of the surface claims, the parties intended to designate the same land, since the names and descriptions of the veins are quite as distinct as those of the surface claims ?

The allegation of new affirmative matters in plaintiff's answer to defendant's cross-complaint is subject to the same objections as above stated to the new matter in defendant's answer to plaintiff's complaint.   It relates solely to a different lot of land and to a different vein from those described in the cross-complaint; and is not inconsistent with the cross-complaint, nor does it constitute a defense or counterclaim thereto.

The express object of the cross-complaint is to quiet defendant's title to the land described therein, and particularly to the *west vein*, the apex of which is alleged to be within the side lines thereof.   While the plaintiff admitted, and even stipulated, that the defendant owned the land described in the cross-complaint and all veins having their apex within the vertical side lines thereof, of what consequence is it that plaintiff denied the location of the *west vein*, as alleged and described in the cross-complaint, without alleging that its apex was within the side lines of plaintiff's land, or in some way claiming title to it?   Suppose the court had rendered judgment for the defendant on the cross-complaint and the answer thereto without evidence, would the plaintiff have any just or lawful ground of complaint?   If the *west vein* exists, and its apex is situated as alleged in the cross-complaint, the defendant's title to it is unquestion-

able on the pleadings, and would properly have been quieted by the supposed judgment; but if, on the other hand, no such vein exists, or, existing, has its apex within plaintiff's side  lines, the  supposed judgment would have had no effect upon it, or upon the plaintiff's title thereto.

Had the plaintiff, in its answer to the cross-complaint, averred that the "east vein of the Ralston No. 1," therein described, was the same vein as that described in the cross-complaint as the " west vein of the West Bullion," in addition to the other averments therein, the answer might have raised the material issues,—1. As to whether or not those different names and descriptions indicated the same vein; and if so, 2. Whether the apex of that vein was within the vertical side lines of West Bullion, or within the side lines of the Ralston No. 1,—upon the determination of which depended the ̓decision of the ultimate question of law, as to whether that vein was the property of the plaintiff or the property of the defendant.

The cases, upon the complaint and answer thereto, and upon the cross-complaint and answer thereto, appear to have been tried together by a jury called to assist the court, and to which the court submitted seventeen special issues.   Those special issues and the jury's answers are as follows: —

" 1.   Is there a vein within the West Bullion  mine location, commonly known and designated as the west vein of the West Bullion mine location?   A. Yes; so designated.

" 2. If your answer to the last question be ' Yea,' then does the said west vein of the said West Bullion mine location lie near the boundary line of the said West Bullion location, and is the said west boundary line of the said West Bullion location the east side line of the Ralston No. 1 north mining claim?   A. Yes.

" 3. Is the top or apex of the said west vein of said

West Bullion mine location within the surface lines of the said West Bullion mine location, extended downward vertically?   A. Taking the evidence and the inclination of the ledge as far as developed, between upraises 3 and 4, yes.

"4. Does the said west vein of the said West Bullion mine location, at any point or points thereon, so far depart from perpendicular in its course downward as to extend outside of the vertical side lines of the said West Bullion mine location, and to and within the vertical side lines of the Ralston No. 1 north mining claim?   A. Yes.

"5. Did the defendant ever, before or at the time of the commencement of this action, or at any time, make or assert any claim adverse to the plaintiff for any estate or interest in the Ralston No. 1 north mining claim, or any ledge or lode the apex of which lies within the surface lines of said Ralston No. 1 north mining claim, extended downward vertically, or any claim of right to enter upon the surface of the same, or any claim of right to enter upon any portion thereof?   A. No.

"6. Did the defendant ever, before or at the time of the commencement of this action, make or assert any claim adverse to the plaintiff for any estate or interest in any lode, ledge, vein, or deposit the apex of which lies inside of the surface lines of the said Ralston No. 1 north mining claim, extended downward vertically?   A. Yes; near upraises 3 and 4.

"7. Did the plaintiff, prior to and at the time of the commencement of this action, assert a claim adverse to the defendant for some estate or interest in said west vein of said West Bullion mine location (if you find that such vein exists), and did the plaintiff, before and at the time of the commencement of this action, claim and assert that the top or apex of the said west vein of the said West Bullion mine location was within the surface lines of the said Ralston No. 1 north mining claim, drawn downward

vertically, and that it was the owner of the said west vein of said West Bullion mine location?   A. Yes.

"8. Is the vein described in the cross-complaint in this action as the west vein of the West Bullion mine location the same vein or lode which is described in the answer of the plaintiff to the cross-complaint in this action as the east vein of the Ralston No. 1 north mining location; and is the so-called west vein of the West Bullion mine location, and the east vein of the Ralston No. 1 north mining claim, the only vein or lode the right to the ownership of which is in dispute in this action, and is it the vein or lode claimed by both the plaintiff and the defendant in this action?   A. Yes.

"9. Is the top or apex of the vein or lode mentioned in the last question within the surface lines of the said West Bullion mine location, drawn downward vertically? A. Taking the evidence and inclination of the ledges as far as developed between upraises 3 and 4, yes.

"10. Is the top or apex of the vein last mentioned within the surface lines of Ralston No. 1 north mining claim, extended downward vertically?   A. Yes; at upraise No. 6.

"11. Is a line drawn from a post designated by the witnesses in this action as post No. 5, to the post designated by the witnesses in this action as the southwest-corner post of the West Bullion mine location, the west boundary line of said West Bullion mine location?   A. Yes.

"12. Is the line mentioned in the last question the east boundary line of Ralston No. 1 north mining claim, so far as said Ralston No. 1 north mining claim extends along said line?   A. Yes.

"13. Is the boundary line between Ralston No. 1 and the West Bullion claim that part of the straight line from post No. 5 to the post on the ground which is claimed to be at the southeast corner of Ralston No. 2, which lies north of a straight line from the point of

commencement of said Ralston No. 1, cutting the said straight line first above named, as surveyed by Mr. Westcoatt? A. No.

"14. Is the boundary line between Ralston No. 1 and the West Bullion claim the straight line from post No. 5 to the post on the ground which is claimed to be at the southwest corner of the West Bullion claim? A. Yes.

"15. Is there one continuous ledge on the two-hundred level of the Bulwer company running from the south line of Ralston No. 1 to the end of the drift, ending at the point on plaintiff's map marked 'K'? A. According to the testimony and character and course of ledge as far as developed, yes.

"16. Is the apex of such one continuous vein mentioned in the last question within the surface boundary lines of Ralston No. 1, extended downward vertically? If so, to what extent? A. Yes; at upraise No. 6.

"17. Is the apex of such last-mentioned continuous vein found at any place within the surface boundary line of the West Bullion claim, extended downward vertically? If so, at what place, and to what extent? A. Taking the evidence and inclination of the ledge, as far as developed between upraises 3 and 4, yes."

The court adopted, as its own findings of fact, the entire verdict of the jury, except the verdict on the sixth special issue, which was rejected.

In addition to the verdict as adopted, the court found the following facts: "That the West Bullion mine location exists, and existed many years prior to the commencement of this action, and that the description of said West Bullion mine location set forth in the answer and cross-complaint in this action is correct, and that said West Bullion mine location was made, and the same existed, prior to the location of the Ralston No. 1 north mining claim; that the defendant was, at the time of the commencement of this action, and for many years prior thereto, and now is, the owner of and in the possession and

entitled to the possession of the said West Bullion mine; that the said West Bullion mine was located upon veins or lodes of quartz or other rock in place, bearing gold or silver, and that the defendant was, at the time of the commencement of this action, and for a long time prior thereto, and now is, entitled to the exclusive right of possession and enjoyment of all the surface included within the lines of its said location, and all veins, lodes, and ledges throughout their entire depth, the tops or apexes of which lie inside of said surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside of the vertical side lines of such surface location; and that the said West Bullion mine location adjoins the Ralston No. 1 north mining claim on the easterly side thereof; that the said Ralston No. 1 north mining claim was a location on a lode, ledge, or vein of quartz or other rock in place, bearing gold or silver; and that the plaintiff was, at the commencement of this action, and for a long time prior thereto, and now is, the owner of and in the possession of and entitled to the possession of the said Ralston No. 1 north mining claim, described in the plaintiff's complaint.

"18. In addition to the foregoing findings, the court finds that the one continuous ledge in the drift on the two-hundred-foot level of the Bulwer Consolidated Mining Company's claims, mentioned and described in the foregoing finding No. 15, is the same ledge which is described in the evidence as existing in upraises 3, 4, 5, and 6, designated and shown on plaintiff's map, exhibit II, and that defendant and cross-complainant make no claim to said ledge in said upraises Nos. 5 and 6, it having disclaimed at the trial all rights of ownership to said ledge in said upraises Nos. 5 and 6.

"19. The court further finds that all that portion of the ledge described and referred to in the foregoing find-

ings Nos. 15 and 18, lying north of said upraise No. 4, and the apex thereof, lies within the surface lines of said Ralston No. 1 mining claim, extended downward vertically, and that defendant asserted an adverse claim to said ledge between upraises Nos. 4 and 5."

Thereupon the court adjudged and decreed, substantially, that the plaintiff is the owner, in possession and entitled to the exclusive right of possession and enjoyment, of all the surface of the land described in the complaint as the Ralston No. 1 north mine, and of all veins, lodes, and ledges the tops or apexes of which lie inside of the surface boundary lines thereof extended downward vertically, etc., including that portion of the vein described in the answer to the cross-complaint as the "east ledge of the Ralston No. 1 north mining claim," commencing at the north side of the upraise No. 4, lying partly within the surface boundary of Ralston No. 1 north mine, and partly within the surface boundary lines of the West Bullion mine, thence running in a northerly direction to the end of the drift marked "K" on the plaintiff's maps,—exhibits B and H,— being the extreme northerly drift on the two-hundred-foot level in said Ralston No. 1 claim; and further decreeing that all adverse claims of defendant to the above-described property are invalid, and that plaintiff's title thereto be quieted against all such adverse claims.

The court further adjudged and decreed that the defendant is the owner, in possession, and entitled to the exclusive right of possession and enjoyment, of all the surface included within the boundary lines of the West Bullion lode location, as described in the cross-complaint and in defendant's answer to plaintiff's complaint, and of all veins, lodes, and ledges the tops or apexes of which lie inside of the surface boundary lines thereof extended downward vertically, etc., including that portion of the vein described in the cross-complaint as "the west vein" of the West Bullion location, lying

between the north side of said upraise No. 4 and the boundary end line of said Ralston No. 1 north mine, being that portion of said vein commencing at the north side of said upraise No. 4, and thence running in a southerly direction to a vertical plane drawn downward through the southern end line of said Ralston No. 1 claim; and further decreeing that defendant's title to said West Bullion surface ground, and all veins, lodes, and ledges last above mentioned, be quieted against all adverse claims of the plaintiff; and further ordered that each party pay its own costs.

The appeal by the defendant is from the whole and every part of the judgment, upon the judgment roll alone, from which it does not appear that there was any demurrer to any pleading, or any objection to the mode of trial.

1. Counsel for appellant claim that the findings of fact do not support the conclusions of law or the judgment, " in that there is no finding to the effect that the defendant asserted a claim adverse to plaintiff to any part of the property described in the complaint, or to the ledge in dispute, before the commencement of the action," and thence concludes that " the judgment should be against the plaintiff, and in favor of the defendant." But, as above shown, this conclusion does not follow, even if it is true that there is no such finding. Conceding that the averment of an adverse claim is necessary in a complaint to quiet title under section 738 of the Code of Civil Procedure, yet, if the defendant, in his answer, claim an adverse interest or estate in the land described in the complaint, a denial that he had made such adverse claim before the commencement of the action would be immaterial. If, on the other hand, the defendant, as here, expressly disclaim any estate or interest in the land described in the complaint, and at the same time deny that he ever made any such adverse claim, the plaintiff would still be entitled to a

decree quieting his title, but without costs. This is implied in section 739 of the Code of Civil Procedure. The object of sections 738 and 739 is to enable the plaintiff, in such action, to dispel whatever may be regarded by third persons, as well as by the defendant, as a cloud upon his title; for even though the defendant makes no adverse claim, third persons may regard plaintiff's title as being subject to an adverse claim by the defendant, which would be a cloud upon plaintiff's title, depreciating its value, and which he would be entitled to have removed by the decree of the court; so that his record title may appear perfect, not only to the defendant, but to all persons whom it may thereafter concern. The only purpose of the averment of an adverse claim is to notify the defendant of the nature of the action, and that he is required to set forth and litigate any adverse title he may claim to have, or to disclaim any such adverse title, either expressly or by default. The case of *Pfister* v. *Dascey*, 65 Cal. 403, cited by appellant, is not in point. The point under consideration here was not presented in that case. The only material issues tendered by a complaint in this class of cases relate to the title of the real property described in the complaint. Therefore there was no necessity for a finding upon the formal but immaterial issue, as to whether the defendant had asserted an adverse title before the commencement of the action.

2. Counsel for appellant further contend that material findings of facts by the court are inconsistent with each other. If the findings referred to by counsel as being inconsistent are material, I think this point should be sustained; but it seems to me that all the findings of fact are immaterial, for the reason that no material issue arises upon the written pleadings. The answer of defendant admits every material issuable averment of the complaint, as it only denies the averment that the defendant had made any adverse claim to an interest or

estate in the real property described in the complaint. Its new matter, as above shown, relates solely to a different lot of land and to a different vein from those described in the complaint, and is not inconsistent with the complaint, and constitutes no defense nor counterclaim.

It is admitted by appellant's counsel that there was no necessity for a cross-complaint, and, as above shown, it appears that a cross-complaint was wholly improper. But conceding that material issues, made by such a cross-complaint and answer thereto, might have been properly tried by consent of the parties, yet no such material issues were made by the cross-complaint and answer thereto in this case.

It is true that collateral issues as to probative facts, subsidiary to the principal issues arising from the pleadings, often become material, but only in proportion to their evidentiary bearing upon the material issues arising directly from the pleadings, and therefore must be wholly immaterial where, as in this case, no material issue arises directly from the pleadings. To hold otherwise would be to substitute oral pleadings, of which there is no record, for the written pleadings required by law, necessarily resulting in the uncertainty and confusion of which this case furnishes a small example.

The first four special issues, except the last clause of the second, are identical with or subsidiary to only immaterial issues arising directly from the pleadings, — immaterial because the plaintiff claimed no estate or interest in the "west vein" of the West Bullion, and did not aver that its apex was within the vertical side lines of the Ralston No. 1, but only that it was not within the vertical side lines of the West Bullion. As to the second clause of No. 2, there was no necessity of a finding, because it was settled and agreed by the pleadings that the west line of the West Bullion and the east line of Ralston No. 1 are identical.

The fifth and first part of the seventh special issues

are immaterial, for reasons already stated (the verdict
on the sixth was not adopted), and neither of the last
two questions in the seventh is founded upon or possibly
subsidiary to any issue made by the pleadings, for, as
before remarked, it is not asserted in any pleading of
either party that the "top or apex of the said west vein
of the said West Bullion . . . . was within the surface
lines of the Ralston No. 1," nor that the plaintiff was
the owner of said "west vein," or claimed any interest
therein.

The eighth special issue is neither founded upon nor
applicable to any issue made by the pleadings. Both
parties named and described the two veins therein men-
tioned as distinct veins located some distance apart from
each other. If this issue resulted from any pleading,
such pleadings must have been oral. If so, which party
asserted and which denied that these two veins, named
and described in the written pleadings as distinct, are
nevertheless identical? The issue itself implies such
assertion by one party and denial by the other. Beside,
the jury is required to find what vein is in dispute!

The ninth and tenth special issues grow out of. and
depend upon the eighth; beside being so ambiguous as
not to admit of a certain answer, since two distinct veins
are "mentioned in the last question." To which of
these do the answers of the jury refer? Probably, but
not certainly, to neither, as "mentioned in the last ques-
tion"; but to the one identical vein found by the jury
to have been designated by the distinctly different names
and descriptions thereof in the cross-complaint and the
answer thereto. But it is enough to say of these issues
that neither of them bears any material relation to the
issues made by the written pleadings. The written
pleadings fixed and agreed upon the location of the
dividing line between the West Bullion and the Ralston
No. 1 upon the surface with absolute certainty, as we
have seen; therefore, the court was not at liberty to find

a different location of it, nor does it appear that either the court or the jury did so. This disposes of special issues 11 to 14 inclusive.

If the facts involved in special issues numbered 15, 16, and 17 could have contributed in any degree to the solution of any material issue raised by the written pleadings, they would have been properly submitted to the jury; but as there was no such material issue upon the written pleadings, they were irrelevant and immaterial. They were the result of purely oral pleadings, framed without regard to the written pleadings.

The findings by the court numbered 18 and 19 are subject to the same objection above made to the verdict on special issues 15, 16, and 17. They are not responsive or helpful to any material issue made by the written pleadings.

The first four findings by the court (not numbered), founded upon the written stipulation of the parties, has no other effect than to adopt the verdict of the jury, except as to issue numbered 6, and to confirm the absence of any material issue upon the pleadings.

Assuming that the two distinct actions, one upon the complaint of the plaintiff, and the other upon the cross-complaint of the defendant, were tried together by consent of the parties, it would seem, though it is not necessary so to decide, that each party was entitled to a decree on the pleadings quieting its title to the real property described in its complaint, regarding the so-called cross-complaint as the complaint of the defendant relating to real property totally distinct and different from the property described in the complaint of the plaintiff.

I think the judgment should be reversed and the cause remanded for further proceedings, with leave to the parties to amend their pleadings, as they may be advised, within the limits allowed by law.

GIBSON, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed and the cause remanded for further proceedings, with leave to the parties to amend their pleadings, as they may be advised, within the limits allowed by law, the costs of appeal to be paid one half by each party.