Filed 2/9/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| WATER FOR CITIZENS OF WEED CALIFORNIA et al., | C093421 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2020-00283365-CU-PO-GDS) |
| v. | |
| CHURCHWELL WHITE LLP et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Civil Liberties Defense Center, Lauren C. Regan (Pro hacs vice); Law Office of Donald B. Mooney, Donald B. Mooney for Plaintiffs and Appellants.

Law Offices of Babak Naficy, Babak Naficy for We Advocate Through Environmental Review as Amicus Curiae in support of Plaintiffs and Appellants.

Hansen, Kohls, Sommer & Jacob, Christine E. Jacob for Defendants and Respondents.

1

This is an appeal from the grant of a special motion to strike a complaint for malicious prosecution. In the underlying action, defendants Churchwell White LLP, a law firm, and two of its attorneys, Barbara A. Brenner and Robin R. Baral (collectively Churchwell) represented a corporation in an action to quiet title to water rights. In the underlying quiet title action, Churchwell sued the City of Weed (City) and the plaintiffs here, Water for Citizens of Weed California, its members, and other citizens of the City (collectively Citizens).[1] The trial court in that action granted Citizens's special motion to strike the complaint, commonly called an anti-SLAPP motion (strategic lawsuit against public participation).

Citizens then filed this action against Churchwell, alleging malicious prosecution for naming them in the quiet title action. The trial court granted Churchwell's anti-SLAPP motion, concluding Citizens did not establish a probability of prevailing on their claim. They did not show that Churchwell lacked probable cause or acted out of malice in naming them in the quiet title action.

We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

The underlying action

In 2017, Churchwell represented Roseburg Forest Products Co. (Roseburg) in an action to quiet title in water rights. Roseburg alleged it owned appropriative rights to 4.07 cubic feet per second (cfs) of water from Beaughan Creek and Beaughan Spring (collectively Beaughan Springs) in Siskiyou County.

---

[1] The individual plaintiffs are Jim Taylor, Michael Yates, Bob Hall, Monica Zinda, David Pearce, Mary Jackson, Ray Strack, and Bruce Shoemaker. The City is not a party to the present action.

The quiet title action arose from the following, as the present complaint alleges in part: In 1966, Roseburg's predecessor, International Paper, entered into an agreement that guaranteed the City rights to 2.0 cfs of Beaughan Springs water for 50 years at a cost of one dollar per year. In 2016, Roseburg and the City entered into a 10-year lease under which Roseburg would provide the City 1.5 cfs of Beaughan Springs water for $97,500 a year, an amount that would increase over the lease's term. The lease required the City to identify an alternate source of water within two years and to cease completely its use of Beaughan Springs water after 10 years.

Citizens allege that after the City approved the lease, they discovered documents which purported to establish that Roseburg "had no right to appropriate the City's water source for its own private gain." Citizens raised their concerns with the community. They circulated a flyer seeking attendance at a public meeting concerning the lease. The flyer read, "California owns the surface water not Roseburg Forest Products. The courts award (adjudicate) water for specific purposes. [¶] California Water Rights and Public Trust Doctrine holds that certain resources are above private ownership and reside in Trust of Government for the benefit of the people. It is the duty of the government to administer these resources to highest public interest. This means you and your officials. [¶] . . . [¶] Is Roseburg Forest Products taking the position they are the court??"

Citizens circulated more flyers in the community. The flyers disputed Roseburg's claim of owning exclusive rights to the City's historic allocation of 2.0 cfs. They stated that a judicial decree in 1932 indicated the water was intended for the City, and that in all subsequent adjudications, there had been "specific dedicated measures allotted for domestic and municipal, irrigation and industrial uses." When International Paper subdivided land and sold houses to the public, the homes "came with a guarantee of water for domestic and municipal use." In 1966, International Paper sold the water and sewer infrastructure to the City as part of entering into the 50-year lease, and later, in 1982, it closed its mill and "gave rights to domestic and municipal water to the City of Weed."

3

The flyers asserted that Roseburg's claim of ownership had "never been ruled on by a court of law," and they stated Citizens and others were prepared to secure the rights "to our water" "through legal action if necessary, to ensure enforcement of the 1932 decree." The flyers solicited financial support.

By letter dated March 29, 2017, Citizens asked the watermaster, the Scott Valley and Shasta Valley Watermaster District, to determine that the City had a right to 2.0 cfs of Beaughan Springs water. In the letter, they summarized the alleged chain of title, stating the 1932 decree indicated an adjudication of 2.0 cfs for the City in the name of a predecessor and specifically for domestic and municipal uses. Citizens had found a letter from 1982 in which International Paper transferred its right to the 2.0 cfs of water to the City, and the watermaster, then the state Department of Water Resources, agreed in writing that the 2.0 cfs belonged to the City. However, the Department of Water Resources in 1996 changed ownership from the City to Roseburg when the 1982 letter could not be found. Citizens asked the watermaster to reconsider this decision and find the City to be the rightful owner of the 2.0 cfs of water. They stated, "The City of Weed has always been, and should continue to be, the rightful claimant to the 2.0 cfs of Beaughan Springs." Citizens stated their request was "an attempt to resolve this matter without having to initiate an expensive and time-consuming court case."

Citizens asked the City to join their request to the watermaster at a city council meeting on May 11, 2017. The City agreed. At the meeting, the City adopted a resolution requesting the State Water Resources Control Board to correct its records to recognize the City's ownership of 2.0 cfs of Beaughan Springs water.

Roseburg sued Citizens and the City the next day. The verified first amended complaint alleged that Roseburg was compelled to bring the action because of "the actions of [Citizens] and the City to join [Citizens's] efforts to attempt to 'transfer' or take a portion" of Roseburg's water rights. Roseburg pleaded causes of action for quiet title and adverse possession of 4.07 cfs of Beaughan Springs water. It also sought

4

declaratory relief, alleging that a judicial determination of rights was necessary because the uncertainty over its right to exclusive use of the 4.07 cfs of water "has resulted in a cloud in title preventing Roseburg from the ability to sell or encumber" its right.

Citizens filed an anti-SLAPP motion to strike the complaint. (Code Civ. Proc., § 425.16.) (Statutory section citations that follow are found in the Code of Civil Procedure unless otherwise stated.) Each of the individual plaintiffs submitted a sworn declaration that he or she did not claim and had never claimed any right, title, estate, lien, or interest in the 2.0 cfs of Beaughan Springs water at issue in the case.

The trial court granted the anti-SLAPP motion. It found that Citizens were named in the action solely because they exercised their constitutional rights. None of them claimed any private interest in the water. The court refused to address the second step of deciding an anti-SLAPP motion, which asked whether Roseburg could establish a prima facie case of success on the merits.

Roseburg appealed the trial court's ruling and the court's subsequent award of fees and costs. This court dismissed the appeals after the parties reached a settlement. As part of their settlement, Roseburg and the City stipulated to judgement that Roseburg owns the exclusive right to divert and use 4.07 cfs of Beaughan Springs' water, the City has no ownership interest in that water, and the City has a leasehold interest in 1.5 cfs of those rights. The trial court entered judgment accordingly.

In the settlement agreement between Roseburg and Citizens, the parties agreed to stipulate to dismiss both appeals, Roseburg agreed to pay Citizens's attorney fees in addition to those awarded by the trial court, and the parties agreed to dismiss all claims except any against Churchwell.

This action

Citizens filed the present action, a "SLAPPback" action, against Churchwell for malicious prosecution for suing them on behalf of Roseburg in the quiet title action.

5

Citizens alleged Churchwell had no probable cause to name them in the underlying action, and that Churchwell named them only to silence and chill their exercise of First Amendment rights.

Churchwell filed an anti-SLAPP motion against the complaint. The trial court granted the motion. It found that although the complaint arose from Churchwell's exercise of its constitutional rights, Citizens did not demonstrate a probability of prevailing on the merits. They did not establish a prima facie case of malicious prosecution: that Churchwell lacked probable cause to name them in the underlying action and that Churchwell acted out of malice.

Citizens challenge those findings in this appeal.

We note that "We Advocate Thorough Environmental Review," a non-profit corporation, has filed an amicus curiae brief in support of Citizens.

DISCUSSION

I

*Standard of Review*

We review the trial court's grant of Churchwell's anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) Our review involves a two-step analysis. We first determine whether Churchwell, the moving party, established that the claim of malicious prosecution arose from its attorneys's actions in furtherance of their "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]" (§ 425.16, subd. (b)(1).)

If Churchwell has satisfied that burden, then Citizens bear the burden of establishing a probability of prevailing on their claim. (§ 425.16, subd. (b)(1).) Citizens must show that their malicious prosecution claim based on Churchwell's protected activity "is legally sufficient and factually substantiated. The court, without resolving

6

evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

In making our determination, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) We accept Citizens's evidentiary submissions as true "and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University, supra*, 2 Cal.5th at p. 1067.)

II

*Probability of Prevailing on the Merits*

Citizens do not challenge the trial court's determination on the first step of analysis, that their claim for malicious prosecution arose from Churchwell's exercise of constitutional rights. We thus turn to the second step and determine whether Citizens have established a probability of prevailing on their claim.

To prevail on their malicious prosecution claim, Citizens must show that the quiet title action (1) was commenced by or at the direction of Churchwell and was pursued to a legal termination favorable to Citizens; (2) was initiated or maintained without probable cause; and (3) was initiated or maintained with malice. (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).) No one disputes the first element, so we address the other two.

A.      Probable cause

Citizens contend that Churchwell had no probable cause to name them in the quiet title action. None of the individual plaintiffs had any claim or interest in the water. Churchwell based each cause of action on the theory that Citizen's actions had created a cloud on Roseburg's title, but Citizens argue this theory is untenable because their actions

7

do not constitute a cloud on title or an adverse claim to the water rights. Citizens assert that the only reason Churchwell sued them was to silence them.

### 1. Legal background

The existence of probable cause is a question of law. (*Parrish, supra*, 3 Cal.5th at p. 776.) The element requires the trial court to determine objectively the reasonableness of the attorney's conduct; in other words, " 'to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable,' as opposed to whether the litigant subjectively believed the claim was tenable. ([*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d. 863,] 878.) A claim is unsupported by probable cause only if ' " 'any reasonable attorney would agree [that it is] totally and completely without merit.' " ' (*Wilson* [*v. Parker, Covert & Chidester* (2002)] 28 Cal.4th [811,] 817; accord, *Sheldon Appel*, at p. 885; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650; see also *Zamos* [*v. Stroud* (2004)] 32 Cal.4th [958,] 970.) 'This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." ' (*Wilson*, *supra*, at p. 817.) The standard safeguards the right of both attorneys and their clients ' " 'to present issues that are arguably correct, even if it is extremely unlikely that they will win.' " ' (*Ibid.*, quoting *Flaherty*, *supra*, at p. 650.)" (*Parrish*, at p. 776.) A plaintiff's successful defense against the underlying lawsuit does not establish the suit was brought without probable cause. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 743.)

" 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164-165.) 'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim.' (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 597.) Probable cause, moreover, must exist for every cause of

action advanced in the underlying action. '[A]n action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted . . . .' (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 57, fn. 5; see *Crowley v. Katleman* (1994) 8 Cal.4th 666, 679, 695.)" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) Where, as here, the state of Churchwell's factual knowledge is undisputed, a jury need not engage in factfinding, and the court decides whether such facts constitute probable cause. (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 981.)

The purpose of a quiet title action is to establish title against any adverse claims to property or any interest therein. (§ 760.020, subd. (a).) Unlike an action for cancelling an instrument, which is aimed at a particular instrument that is a cloud on the property owner's title, an action to quiet title "is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property. It is not aimed at a particular piece of evidence, but at the pretensions of an individual." (*Castro v. Barry* (1889) 79 Cal. 443, 446 (*Castro*).) The ultimate fact to be found is the ownership of the property. (*Rahlves & Rahlves, Inc. v. Ambort* (1953) 118 Cal.App.2d 465, 476.)

For purposes of quiet title actions, a claim "includes a legal or equitable right, title, estate, lien, or interest in property or cloud upon title." (§ 760.010, subd. (a).) The term "claim" "is intended in the broadest possible sense." (Cal. Law Revision Com. com., West's Ann. Code Civ. Proc., foll. § 760.010.) The adverse claim is not required to "be of any particular character." (*Castro, supra*, 79 Cal. at p. 446.) A quiet title action is " 'not confine[d] . . . to the case of an adverse claimant setting up a legal title or even an equitable one; but the [statute] intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension.' " (*Id.* at p. 447, quoting *Head v. Fordyce* (1860) 17 Cal. 149, 151.)

9

The rule may be stated more broadly:  A property owner may bring a quiet title action "to determine any adverse claim whatever.  For if the defendant by his answer disclaims all interest whatever, judgment may, nevertheless, be entered against him, though in such case it must be without costs." (*Castro, supra*, 79 Cal. at p. 447.)

Hence, "it matters not whether a claim is based upon a valid title or interest in real estate or upon a mere pretension or asserted right therein or thereto, or issues out of, or concerns, or is annexed to or exercisable in connection with such property; it may still be the subject of an action to quiet title . . . ." (*Hamilton v. Elvidge* (1933) 132 Cal.App. 21, 27.)  The action may be brought whether the adverse claim "be founded on evidence or utterly baseless." (*Kroeker v. Hurlbert* (1940) 38 Cal.App.2d 261, 266.)  The action even lies against any adverse interest that might by regarded by third persons as a cloud on title. (*Bulwer Consolidated Mining Co. v. Standard Consolidated Mining Co.* (1890) 83 Cal. 589, 609 (*Bulwer*).)

2.      Analysis

Citizens contend that no reasonable attorney would believe that their statements and actions constituted a cloud on title or an adverse claim on Roseburg's interest. Churchwell claimed that Citizens publicly asserted "the water (1) belonged to the people, to the citizens themselves of the City of Weed; (2) had long since been declared a public resource; and on this basis, (3) the individual plaintiff parties requested control of the water be returned to the citizens."  Citizens argue that these facts cannot constitute a cloud on title.  None of the individual plaintiffs ever asserted a personal interest in the water or suggested that anyone other than the City and the public were entitled to the water.

Moreover, a cloud on title traditionally concerns the existence of an instrument which purports to grant an interest in property in conflict with another person's interest. (See *Pixley v. Huggins* (1860) 15 Cal. 127, 134.)  Citizens state they did not present or

10

rely upon any instrument to contest Roseburg's water rights or establish an adverse claim. As for the 1982 letter, Citizens say they merely brought the document to the attention of local government. Their speech and actions did not rise to the status of any legal declaration or order, which could be made only by the City. Under California law, quiet title will not lie "to dispel mere verbal assertions of ownership as clouds on title[.]" (*Devine v. City of Los Angeles* (1906) 202 U.S. 313, 334.)

Citizens argue that Churchwell's theory means any person who makes a statement regarding the disposition of property clouds that property's title, even if the person has no personal interest in the property. In other words, public advocacy and activism regarding the disposition of ostensibly public resources like water is the equivalent of asserting title via written deed and thus puts one at risk of being sued. Citizens claim there is no case law that political activists can be deemed to have clouded title simply by engaging in political speech. This lack of caselaw, Citizens assert, shows that no reasonable attorney would believe he or she had probable cause to name Citizens in the quiet title action.

We disagree with Citizens. Under the facts and circumstances, we cannot hold that any reasonable attorney would conclude Roseburg's quiet title action was totally and completely without merit. Rather, a reasonable attorney could conclude that Churchwell had probable cause to name Citizens in the quiet title action. That attorney could determine that Citizens's conduct went beyond mere protected speech and created an adverse claim against Roseburg's title. Citizens's publications claimed that Roseburg did not own rights to the water, that California owned the water in trust for the public or the City owned the rights, and the water had long been declared a public resource. More significantly, Citizens formally requested the watermaster to determine that the City owned the 2.0 cfs of water, and requested the City to join that request, which it did. They threatened legal action to protect what they claimed was the public's or City's right to the water, including action if the watermaster did not determine that the City owned the

11

water.  Taken together, these actions constitute more than mere verbal assertions of ownership.

A quiet title action lies to address "every description of [a] claim" and "any adverse claim whatever" that might reduce the value of the owner's property or whereby the owner is inconvenienced or damaged by an assertion of a title which could grow out of the adverse pretention.  (*Castro, supra*, 79 Cal. at p. 447.)  A reasonable attorney could believe that Citizen's actions, particularly their pursuit of relief from the watermaster, created an adverse claim to Roseburg's title by depreciating its value and reducing its marketability.

Citizens's declarations disclaiming any personal interest in the water rights did not negate cause for naming them in the action.  In *Bulwer, supra*, 83 Cal. 589, a case Churchwell found in its research, the California Supreme Court ruled that an owner could state an action for quiet title even when the defendant did not assert an individual claim against the property.  The cause of action enables the owner "to dispel whatever may be regarded by third persons, as well as by the defendant, as a cloud upon his title; for even though the defendant makes no adverse claim, third persons may regard plaintiff's title as being subject to an adverse claim by the defendant, which would be a cloud upon plaintiff's title, depreciating its value, and which he would be entitled to have removed by the decree of the court; so that his record title may appear perfect, not only to the defendant, but to all persons whom it may thereafter concern.  The only purpose of the averment of an adverse claim is to notify the defendant of the nature of the action, and that he is required to set forth and litigate any adverse title he may claim to have, or to disclaim any such adverse title, either expressly or by default." (*Id*. at p. 609.)

Citizens do not dispute this rule of law.  Rather, they contend there is no evidence in the record of a third person regarding Roseburg's title as subject to an adverse claim by them.  For our purposes, however, we must determine whether any reasonable attorney would agree it was totally and completely without merit for Churchwell to conclude that

a third party would regard Roseburg's title as subject to an adverse claim, as that term is broadly defined, on account of Citizens's actions.

We conclude a reasonable attorney would not believe that Churchwell's belief in probable cause was without merit. The attorney could believe, as Churchwell did , that Citizens's conduct raised adverse interests to Roseburg's rights, as the law broadly defines those interests, and that a third person aware of Citizens's actions may believe those actions depreciated the water rights' value or their marketability. A third person might think twice about acquiring the water rights from Roseburg knowing Citizens had formally requested a public agency to determine that the rights do not exist.

Citizens's threats of legal action also were not without impact. Members of the public, even though they do not have an individual interest in lands held in trust for the public, have long had standing to bring an action on behalf of the public to enforce a public land trust or easement or to defend a quiet title action on behalf of the public by asserting a public right to use private property. (*Marks v. Whitney* (1971) 6 Cal.3d 251, 261-262, and cases cited therein.) Citizens's threats of legal action should the watermaster disagree with them theoretically could also affect a third person's understanding of the value and marketability of the water rights. A reasonable attorney could conclude from Citizens's actions that a claim of probable cause to bring a quiet title action against Citizens was not totally and completely without merit.

Citizens's argument that their actions cannot be determined to be a "cloud on title," as Churchwell had asserted, does not prove that their actions cannot be an adverse claim on Roseburg's title. A void or voidable instrument that might cause harm to a party if left outstanding or in the chain of title can be removed by the remedy of cancellation, often referred to as removing a cloud on title. (Civ. Code, §§ 3412-3414; see *Pixley v. Huggins, supra*, 15 Cal. at p. 132.) An action to quiet title, however, may address adverse claims in addition to those traditionally referred to as clouds on title. As stated earlier, a quiet title action, unlike in a cancellation action, "is for the purpose of

13

stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property . . . . It is not aimed at a particular piece of evidence, but at the pretensions of an individual." (*Castro, supra*, 79 Cal. at p. 446.) Churchwell's possible misuse of nomenclature did not render its conclusion that probable cause existed to bring a quiet title action totally and completely meritless.

Citizens and amicus curiae contend that Churchwell's theory of probable cause will chill protected speech. They assert the theory puts citizens at risk of being sued merely because they publicly express their opinions and arguments regarding the disposition of ostensibly public resources, like water. Amicus argues that environmental advocates will often assert that the public has an interest in water where appropriations are disputed, such as in cases involving waters and lands subject to the public trust doctrine, and that if asserting the public has a right to water resources creates an actionable cloud on title and subjects citizens personally to a quiet title action, the public trust doctrine will fade into history.

This action does not endanger the public trust doctrine, as there is no evidence any of the water owned by Roseburg was owned in trust for the public. Moreover, mere verbal assertions of ownership do not create a cloud on title. (*Devine v. City of Los Angeles, supra*, 202 U.S. at p. 334.) A reasonable attorney, however, could conclude that Citizens did more than engage in protected speech and petitioning regarding the disposition of a public resource. They formally requested a public agency to determine that Roseburg did not own rights to the water. And they threatened legal action if the agency determined otherwise. We cannot say that any reasonable attorney, understanding the actions Citizens took against Roseburg's title purportedly on behalf of the public, would conclude that a claim of probable cause to bring a quiet title action against Citizens was completely and totally without merit.

In their reply brief, Citizens allege for the first time that Churchwell is bound under res judicata to findings the trial court made in granting Citizens's anti-SLAPP

14

motion in the quiet title action.  The claim is forfeited.  We do not address issues raised for the first time in a reply brief because doing so would deprive Churchwell the opportunity to argue against the new issue.  (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 707.)

### B.     Malice

We need not address the element of malice.  Because we have determined there was probable cause to bring the quiet title action, "the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated."  (*Sheldon Appel Co. v. Albert & Oliker, supra*, 47 Cal.3d at p. 875.)

DISPOSITION

The order striking the complaint is affirmed.  Costs on appeal are awarded to Churchwell.  (Cal. Rules of Court, rule 8.278(a).)

 

HULL, Acting P. J.

We concur:

RENNER, J.

EARL, J.

15