## State of Iowa *v.* Chicago, M. & St. P. Ry. Co.

*(Circuit Court, N. D. Iowa, E. D.* December 5, 1887.)

1. REMOVAL OF CAUSES—MOTION TO REMAND—WHAT CONSIDERED.

On motion to remand to the state court, by plaintiff, defendant sought to have the case retained, alleging that the matter in dispute arose under the constitution, laws, or treaties of the United States. *Held,* that to give the court jurisdiction it must clearly appear from the record that the construction of some provisions of the constitution, laws, or treaties must be met and decided before the issues in the particular cause can be finally disposed of, and the

court will not take jurisdiction because a party asserts it exists, but in determining that matter will consider all points of law and fact that inhere to that jurisdictional question.

2. SAME.

A suit between a state and a railroad company arose out of the provisions of the statutes of a state, the ordinances of a city, and a contract alleged to exist with the railroad as to the use of certain side tracks in the city, including the power of the railroad commissioners of the state to fix the rate to be paid defendant for switching cars of other companies over the tracks in question. *Held* that, as all that could be said from the record was that if certain conditions of fact were made to appear in the evidence, a federal question might arise, the record failed to show jurisdiction in the United States court, and the cause must be remanded.

3. SAME—JURISDICTION—FEDERAL QUESTION.

A state filed a bill in a state court to enforce an order of the state board of railway commissioners, holding that certain tracks in the streets of a city are, under the laws of the state, and the ordinances of the city, public highways, and not the private property of the defendant company, and that the defendant was under obligations to pass over such tracks the cars of other railway companies when necessary to reach their customers' warehouses, and fixing charges for the switching done by the defendant. The city had given defendant permission to lay its tracks upon certain streets, upon condition that they should be public, and open to the use of the citizens. The case was removed to the federal courts, and plaintiff moved to remand. *Held* that, in imposing this condition, and fixing the rate to be charged, it does not clearly appear that the state is interfering with or regulating commerce between the states, in violation of the federal constitution.

4 CARRIERS—TERMINAL FACILITIES—ACT OF CONGRESS—STATE LAWS.

Act of congress, February, 4, 1887, § 3, provided that common carriers should afford equal facilities for the interchange of traffic between their lines, "but this shall not be construed as requiring any such carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business." The defendant had bound itself by a contract with a city to allow other roads to use its terminal facilities, and a state had provided by statute that different companies might have a joint use of such facilities. *Held*, that the contract with the city, and the rights of the second companies to such joint use, were not affected by the above act, but the same must be determined by the statutes of the state.

In Equity. On motion to remand.

*A. J. Baker*, Atty. Gen., and *Fouke & Lyon*, for complainant.

*J. W. Carey* and *W. J. Knight*, for defendant.

SHIRAS, J. From the record in this cause it appears that until within a recent period the defendant company and the Illinois Central Railroad Company owned or controlled all the lines of railway entering the city of Dubuque, and that through the construction of side tracks over and along the public streets and alleys, and by obtaining control of certain tracks built, under an ordinance of the city of Dubuque, by the Lumberman and Manufacturer's Railway Company, the named companies practically controlled the access by railway cars to a large part of the manufactories and warehouses of the city. Within the past year or two, the Minnesota & Northwestern and Chicago, Burlington & Northern railway companies have built their lines to or through the city, and the question becomes a practical one, whether these companies could have their cars switched over the tracks owned by the defendant company, so as to reach the manufactories or warehouses of persons desiring to patronize them. The defendant company established a rate to be charged for

switching such cars, to which exception was taken, and the result was that the state board of railway commissioners was appealed to; and the board, after considering the subject, rendered an opinion in which it was held that "the sidings of the companies in Dubuque are public highways, and that the companies are required by law to haul over them the cars of all transportation companies or persons at reasonable rates," and the rate to be charged for such service was fixed by the board.   Thereupon, under the provisions of Acts 20th Gen. Assem. Iowa, *c.* 133, a proceeding in equity was brought by the state of Iowa against the railway company, in the district court of Dubuque county, Iowa, for the purpose of enforcing the decision of the board, from which court the proceeding has been transferred to this court, and it is now sought to have the cause remanded on the ground of want of jurisdiction.

The motion to remand presents the question whether it is a removable case, and as the state is a party, and jurisdiction in the federal court cannot be had by reason of diverse citizenship, it follows that to sustain the jurisdiction it must appear that the case is of a civil nature, wherein the matter in dispute exceeds $2,000 in value, exclusive of interest and costs, and arises under the constitution, laws, or treaties of the United States.   In determining when the supreme court has jurisdiction to review the decision of the highest tribunal of a state, on the ground that it involved the construction of the constitution, laws, or treaties of the United States, the supreme court has uniformly held that it must clearly appear from the record that the question arising under the federal constitution, laws, or treaties, was in fact passed upon or necessarily involved in the conclusion reached.   In *Crowell* v. *Randall,* 10 Pet. 368, it was said that it was "not sufficient to show that a question might have arisen or been applicable to the case, unless it is further shown, on the record, that it did arise, and was applied by the state court to the case."   In *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, the rule is stated to be that "the court must be able to see clearly, from the whole record, that a certain provision of the constitution or act of congress was relied on by the party who brings the writ of error, and that the right thus claimed by him was denied."   In *Brown* v. *Colorado,* 106 U. S. 95, 1 Sup. Ct. Rep. 175, it is said: "Certainly, if the judgments of the courts of the states are to be reviewed here for decisions upon such questions, it should be only when it appears unmistakably that the court either knew or ought to have known that such a question was involved in the decision to be made."   It certainly will not be claimed that the rule is any less strict, when the question is as to the jurisdiction of the circuit court.

When it is sought to deprive a state court of the right to hear and determine a cause properly and rightfully brought therein, by removing the same into the federal court, on the ground that the controversy involves in its determination a question arising under the constitution, laws, or treaties of the United States, it must be made to appear, clearly and unmistakably from the record, that the cause or controversy necessarily, in its determination, involves the consideration and determination of such federal question.   It is not sufficient for it to appear that such federal

question may possibly arise.   Jurisdiction to wrest the case, if I may use that term, from the state court, cannot exist unless a federal question is certainly involved.   If the record simply shows that possibly, during the trial, some federal question may be presented, that will not confer the jurisdiction, and entitle the defendant to the right of removal.   If it were otherwise, and upon the showing that a federal question might arise, the case could be brought into the circuit court of the United States; the jurisdiction would then exist, not of the federal question, but of the case; and yet, upon the trial, the decision might be rested· upon questions of fact or law not arising under the federal constitution or laws, and thus the state court would have been deprived of its jurisdiction wrongfully.

The jurisdiction of this court either by original process, or by removal, in the class of cases under consideration, depends solely upon the fact that the controversy between the parties requires, for its final determination, the construction of some provision of the constitution, laws, or treaties of the United States, and the application thereof to the facts of the particular case, in such sense that the ruling thus made will materially affect the conclusion reached upon the controversy between the adversary parties to the litigation.   Unless from the record it clearly appears that the federal question must be met and decided, before the issue or issues in the particular cause can be finally disposed of, it cannot be said that the matter in dispute arises under the constitution or laws of the United States, within the meaning of the statute.   In such case, no removal can be had, and the cause must be heard and decided in the state court.   If during the trial, in fact a federal question does arise, and is decided adversely to the party claiming the protection of the federal constitution or laws, the party aggrieved can, by proper proceedings, carry the question from the court of final resort in the state to the supreme court of the United States.

It was suggested on the argument, that as the defendant set forth on the record that it claimed a defense to the proceeding arising under the laws of the United States, this necessarily raised a federal question, because the court would be required to consider the facts thus averred, in order to determine whether they presented a federal question, and that this involved taking jurisdiction of the cause.   Whenever the jurisdiction of the court is challenged in a given cause, it becomes its duty to examine into and decide the question.   It is not bound to retain jurisdiction simply because a party asserts that the same exists.   On the contrary, it becomes the duty of the court, as already said, to hear and determine the issue of jurisdiction thus raised; and if in a given case the jurisdiction is based upon the allegation that it presents a question arising under the constitution or laws of the United States, then it becomes the duty of the court to examine the record, and to ascertain whether, in fact, the controversy requires for its determination the decision of the title, right, privilege, or immunity claimed to arise under the federal constitution or laws, and also whether the title, right, privilege, or immunity relied upon actually arises under such constitution or laws.   If the right to hear and determine a plea to the jurisdiction ex-

ists, and this is not questioned, then it must be conceded that the court must have the right to consider and determine all the questions of law and fact that inhere in the jurisdictional question, for in no other way can the court properly discharge the duty imposed upon it.   In *Starin* v. *New York*, 115 U. S. 248, 6 Sup. Ct. Rep. 28, it is said: "The character of a case is determined by the questions involved.   If from the questions it appear that some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the constitution or laws of the United States, within the meaning of that term as used in the act of 1875; otherwise not."

What then are the questions arising in the present controversy?   The proceeding itself is one instituted by the state of Iowa under the provisions of an act of the state legislature passed for the purpose of providing a legal method for enforcing the conclusions or orders of the state board of railroad commissioners.   The particular order was one made by the commissioners which in effect holds that certain side and spur tracks, laid down over the streets and alleys of the city of Dubuque are, under the laws of the state of Iowa and the ordinances of the city of Dubuque, public highways, and not the private property of the defendant company, and that, for the reasons set forth in the commissioners' opinion, the defendant company was under legal obligation to pass, over such side and spur tracks, the cars of other companies, when such passage became necessary in order to enable the other companies to reach the factories or warehouses of their customers; and the commissioners also fixed the rates to be charged for the work to be done by the company when thus engaged in performing this switching.   It is clearly apparent, from this brief statement, that the complainant does not base the right asserted and sought to be enforced against the company upon any part of the constitution or laws of the United States; but on the contrary, to establish the right, if any such exists, dependence must be had upon the state laws and the ordinances of the city of Dubuque, coupled perhaps with principles of general jurisprudence, not depending for their existence or authority upon the federal constitution or laws.   The federal question, if any exists, must be sought, then, in the defense or defenses interposed by the defendant, and substantially it is claimed that the action of the commissioners is a violation of the federal constitution in that it is a regulation of interstate commerce.

Can it be fairly said that if the state of Iowa, by direct legislative action, or through the power conferred upon the city of Dubuque, has provided that certain railway tracks laid down in and over the public streets of the city of Dubuque, shall be and remain public highways, open to the use of every railway coming into Dubuque, that it was thereby regulating interstate commerce, and exercising a power prohibited by the federal constitution?   When the state of Iowa, and the city of Dubuque under its authority, gave permission to the defendant company to lay down tracks along certain streets, or to use those already laid

down, upon condition that such tracks should be public and open to the use of the citizens of Dubuque, how did it regulate interstate commerce, or place any burden, hindrance, or restriction thereon? But it is said that the state, through the agency of its commissioners, is seeking to fix the rate to be charged for the switching required to be done by the defendant, and that thereby interstate commerce is affected and regulated, because the cars thus switched may be filled with merchandise or other property brought from other states into Iowa, or intended to be carried from Iowa into other states. It will be noted that the operations of the defendant company, when engaged as a common carrier of persons or property either wholly in Iowa, or between Iowa and other states, are not in any manner affected or regulated, either as to the mode of carriage, or to the price to be paid, by the order of the commissioners. The argument is that the property conveyed by the other railway companies may form part of the commerce between the states, and that in this way fixing the rate to be charged by the defendant company will affect the rate for the entire transportation. The duty imposed upon the defendant company is that of passing the cars of the other connecting companies over the side and spur tracks in question, all of which are included within the limits of the city of Dubuque, and within the boundaries of the state of Iowa. Certainly it cannot be said that upon the face of it it clearly appears that by imposing this duty upon the defendant company, and providing the reasonable compensation to be paid therefor, the state is interfering with or regulating commerce between the states. All that is sought to be done, is to fix the rate to be charged by the defendant company for certain work which it has assumed to do, not by reason of its character as a common carrier, but as a consideration which the company agreed to do and perform for the privilege of laying down the side tracks in question. The facts averred in the record do not certainly show that the question of interstate commerce is necessarily involved in the case. If, in fact, such a question should arise and be decided, the defendant's rights in this particular will be fully protected by the right of appeal to the supreme court of the United States.

It is also urged that the action of the commissioners sought to be enforced in this proceeding is in contravention of the last clause of section 3 of the act of congress approved February 4, 1887, and known as the "Interstate Commerce Act." In the named section of the act, it is provided that any common carrier subject to the provisions of the act must afford equal facilities for the interchange of traffic between their respective lines, and for the forwarding, receiving, and delivering of passengers and property to and from their several lines, and those connecting therewith; and then comes the clause relied on, as follows: "But this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business." The meaning of this clause is clear. It simply declares that the preceding provision of the section shall not be deemed to give the right to one carrier to use the tracks or terminal facilities of another carrier in the

like business. It has reference to the effect of the act of congress, and nothing else. If the defendant company, by a contract with the city of Dubuque, has bound itself to allow other companies to use part of its tracks or terminal facilities, this clause of the act of congress does not affect such a contract or the enforcement thereof. So, also, if the state of Iowa has provided by proper statute that different companies may have a joint or common use of certain terminal facilities, the rights of the several companies to such joint use are not affected by the provisions of the interstate commerce act, but the same must be measured and determined by the statutes of the state.

So far as it certainly appears from the record in this cause, the questions necessarily involved in the controversy between the parties grow out of the provisions of the statutes of the state, of the ordinances of the city of Dubuque, and of the contract alleged to exist on part of the company in regard to the use of the side tracks in question, including the power of the railroad commissioners to fix the rates to be paid the defendant for switching the cars of the other connecting companies over the side tracks in question. It does not certainly appear that in deciding the issues, it will be necessary to construe or apply any provision of the federal constitution or laws. The utmost that can be fairly said is that in the trial of the case, if certain conditions of fact are made to appear by the evidence, a federal question or questions may arise. If so, and if the protection or defense claimed by defendant under federal law is adjudged against the contention of the company, it has secured to it the right of appeal to the supreme court of the United States.

As the record now stands, it does not appear that a federal question is necessarily involved, and hence the record fails to show jurisdiction in this court, and the cause must be remanded to the state court.