## INEZ MIN. Co. *v.* KINNEY *et al.*

(*Circuit Court, D. Idaho.* June 30, 1891.)

1. **JURISDICTION—MINING CASES—CONSTRUCTION OF UNITED STATES LAWS.**
   The question of the discovery of a mining claim within the limits of another valid mining claim involves the construction of a congressional act, but, having already been construed by the supreme court of the United States, cannot be reconsidered by the inferior national courts.

2. **SAME—ABANDONMENT OF CLAIM.**
   Abandonment of a mining claim is not dependent upon any law of congress. In determining any question of abandonment, the construction of no act of congress is involved, and its consideration does not give the United States courts jurisdiction.

*(Syllabus by the Court.)*

In Equity.
*Albert Hagan* and *Frank Ganahl*, for plaintiff.
*W. B. Heyburn*, for defendants.

BEATTY, J. This action was commenced in a district court of Idaho territory for the purpose of quieting the title to the plaintiff's mining claim, known as the "Oakland," and to restrain the defendants from interfering with plaintiff's possession thereof; while the defendants justify their action upon the ground that they own the premises in question as the "Colonel Sellers" mining claim. The action is in the form indicated by statutes of said territory, then in force. It appears from the record that after the cause had been tried, and while under consideration by

said territorial court, the defendants on the 9th day of July, 1890, filed in said court their request for the transfer of the cause, and their affidavit alleging "that the adjudication of the issues involves the construction of the acts of congress," and "that the sum and value involved in said action exceeds the sum of two thousand dollars, exclusive of costs;" that on the 12th day of said month the defendants filed in said court another affidavit, in which it is alleged: (1) That the plaintiff's Oakland claim includes all of defendants' Colonel Sellers claim. (2) That the original location of the Oakland mining claim was made within the limits of, and upon the discovery of, a valid mining claim called the "Mutual Benefit Fraction;" "that, at the time of such attempted location of the Oakland, the Mutual Benefit Fraction was a valid and subsisting claim, and that said Oakland location was void under said act of congress." (3) "That the plaintiff amended the location of its said Oakland claim, and defendants claim that said amended location was and is void under said act of congress, because the discovery point of the amended location of said Oakland was knowingly included within the staked boundaries of an adjacent legal mining claim, called the 'Sierra Nevada Lode.'" And (4) "that in said action plaintiff claims under said act of congress a right to abandon a mining claim for the benefit of parties, to be chosen by the parties so abandoning, and that it can acquire title by such acts of abandonment;" which defendants dispute, and say "that all these questions necessarily involve the construction of said act of congress;" that on the 17th day of October, 1890, the defendants file in this court, as the record of the cause, what purports to be copies of the original papers and files in the case. On April 9, 1891, the plaintiff files its motion in this court to dismiss such record, for the reason, among others, that it is a transcript of and not the original files; and on the succeeding day the defendants file their motion for an order upon the state court to transmit to this court such original files; and they therein allege that the sum and value in controversy exceeded, when the suit was commenced, the sum of $2,000, exclusive of interest and costs, and that the mining property involved was at the time worth $5,000. Both motions were considered together, and in harmony with the ruling of this court, in the case of *Burke* v. *Mining Co.*, 46 Fed. Rep. 644, the plaintiff's motion, in so far as it is based upon the reason above specified, and the defendants' motion, are denied.

As disclosed by the record and arguments in the cause, but two questions remain for determination. What was the value at the commencement of the action of the matter in dispute? And is the construction of any law of the United States involved? The matter in dispute must be that particular tract of mining ground claimed by each party. While it does not appear just what that is, it may be inferred, from some statements in the record that it is the whole of defendants' claim, being a piece of ground 320 feet long by about 190 feet wide. But there is not in any part of the record, prior to the papers moving the transfer of the cause, any statement whatever of the value of any ground or of any matter in dispute. As has been frequently held, the allegation in defend-

ants' affidavit of July 9th is only an assertion of value at that date, and not at the time the action was commenced. However, if the statements of value made in defendants' said motion for an order on the state court may still be considered, notwithstanding the overruling of the motion itself, they are amply sufficient to show the necessary value at the institution of the action to give this court jurisdiction.

What issue herein involves the construction of any congressional law is the remaining question for solution. It is not now disputed that when any question, arising under the laws of the United States, has been once clearly and unequivocally adjudicated by the supreme court, it is no longer a proposition for judicial inquiry by the inferior national courts. No issue growing out of any statute, which has been once so adjudicated, can be said to involve in its determination the construction of such statute. It has been construed; there is nothing left to construe. All there is left is to follow the construction given. Neither is it sufficient, in any case, only that a right is involved which is granted by some act of congress, but there must be an actual contest as to the proper construction of such act, in the adjudication of the right, the same having never been authoritatively construed. The rule is well stated in *Starin* v. *City of New York*, 115 U. S. 257, 6 Sup. Ct. Rep. 28, that if "it appears that some title, right, privilege, or immunity, on which the recovery depends will be defeated by one construction of the constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the constitution and laws of the United States, within the meaning of that term as used in the act of 1875; otherwise not."

Turning, now, to the pleadings, it will be found they constitute an action framed in pursuance of the statutes of Idaho for the quieting of the title to a piece of mining ground, which is no different in form from an action to quiet the title to any other land, the title to which depends upon some act of congress. The laws of congress are the basis of title to both mineral and agricultural lands, but that the title is involved is not alone sufficient to give a federal court jurisdiction. The question of jurisdiction in any such case is governed by the fact that such laws must or must not be construed in reaching a conclusion. The action based upon an adverse claim to an application for patent to mining ground is an apparent exception to this rule, but jurisdiction in that action is not based alone upon a question of construction of the law. That action is especially contemplated by the statute; the government has instituted it as one of the means to the primary disposal of its domain. To determine some questions, it substitutes a court for its land-office, and to some extent the government is interested that the just conclusion shall be reached. The form of this action is not based upon any law of the United States. Does the adjudication of the right involved depend upon the construction of any such law? In defendants' affidavit of July 12th it is stated that the discovery of plaintiff's said Oakland claim, as well as of the amended location thereof, was within the limits of another valid mining claim, and it is alleged this involve

the construction of the mining acts of congress. This would be true, but for the fact that this question has already been distinctly determined in *Gwillim* v. *Donnellan*, 115 U. S. 45, 5 Sup. Ct. Rep. 1110. Such affidavit further recites "that in said action plaintiff claims under said act of congress a right to abandon a mining claim for the benefit of parties to be chosen by the parties so abandoning, and that it can acquire title by such acts of abandonment." As the plaintiff makes no such direct allegation, it is presumed such was defendants' deduction from the complaint, which shows that the claimants of the Mutual Benefit Fraction located substantially the same premises as the Oakland, and afterwards amended the notice and location of said Oakland. Adopting, however, the defendants' view that the pleadings show such abandonment, it becomes pertinent to inquire what act of congress must be construed to determine the rights based upon any abandonment of a mining claim. The mining act itself makes no provision for or reference to the abandonment of a claim. It does provide for its forfeiture on failure to perform the annual work required. Forfeiture can occur only at the termination of the prescribed period, and is the creature of a positive statute. What is abandonment? No statute, at least not our mining statute, defines it. The common law of the land defines it as the relinquishment, the absolute forsaking, of a right. It is a question of intention, and occurs the instant the intention is formed. It is a law recognized and existing everywhere, and long before the enactment of our mining statutes, before their existence, it had been directly applied to mining interests and rights to which it was claimed to be especially applicable. Its first recognition in such interest in the west was, I believe, in 1856, in the case of *Davis* v. *Butler*, 6 Cal. 510, which was followed by many subsequent cases in California, Nevada, and elsewhere, both before and since the enactment of our mining statute. It was, in 1850, (*McGoon* v. *Ankeny*, 11 Ill. 558,) applied to slag which had been cast away, and it has long been applied to most rights which have been voluntarily surrendered and abandoned. It is in no sense provided for or prescribed by our mining laws. It is simply a general rule of property applied to mining rights. To determine its effect in any mining action, a construction of the United States mining laws cannot be involved. The conclusion being that this court has not jurisdiction of this cause, it is ordered that it be dismissed, and remanded to the proper state court.