## CALIFORNIA OIL & GAS CO. OF ARIZONA v. MILLER et al.

### (Circuit Court, S. D. California. July 10, 1899.)

### No. 854.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

Two things are necessary to the existence of a federal question which will confer jurisdiction on a circuit court of the United States: First, an actual dispute between the parties as to the meaning of some constitutional provision or law of the United States; and, second, materiality of the construction of such provision or law to a determination of the cause; and it is now well settled that these matters must appear from the plaintiff's statement of his own claim in the form required by good pleading.[1]

2. SAME—PLEADING—SUIT TO QUIET TITLE.

In a suit to quiet title, the complainant need not do more than to allege his own title, and that the defendant claims adversely to him. The nature of the adverse claim, its source, and the manner in which it originated, are immaterial; and, if such matters are alleged, they must be disregarded, for the purpose of determining whether the bill discloses a federal question.

3. SAME—SUIT INVOLVING TITLE TO MINING CLAIMS.

A bill to quiet title to a mining claim, eliminating all allegations relating to the claims and contentions of defendants, though complainant's claim of title is based on the mining laws of the United States, does not show that the construction or effect of such laws is in dispute, as it is open to defendants to allege any other ground of defense, and the only controversy, after issue has been joined, may be in regard to questions of fact.

---

[1] Jurisdiction of courts in cases involving federal questions, see note to Bailey v. Mosher, 11 C. C. A. 308, and note to Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

4. EQUITY—SUIT TO QUIET TITLE—POSSESSION OF DEFENDANT.

A bill to quiet title in complainant to an oil claim under the placer mining laws, which alleges that defendants have entered upon the ground, and have extracted and removed oil therefrom, and are engaged in sinking a well thereon, and which asks an injunction to restrain them from proceeding with such work, and from taking and removing oil, is, in effect, a bill to obtain possession, and admits the possession of defendants; hence it is not cognizable by a federal court of equity, the remedy being at law.

On Application for Temporary Injunction.

A. H. Ricketts, Wm. H. H. Hart, and Aylett R. Cotton, for plaintiff.
L. L. Cory, J. A. Hannah, and Bicknell, Gibson & Trask, for defendants.

WELLBORN, District Judge. This is a suit to quiet complainant in the title to and possession of certain land situated in Fresno county, Cal., to wit, the S. W. $\frac{1}{4}$ of section 20, township 19 S., range 15 E. Mt. Diablo base and meridian, and to restrain defendants from prosecuting mining development and work on said land. The bill alleges: That complainant was and is the owner and in possession of, and entitled to the possession and occupation of, said land, and that complainant's title and ownership is derived wholly from the United States through and by the locations of said land under the laws of the United States, and that complainant in good faith claims that a true construction of the laws of the United States gives to complainant the title to said land, and that complainant has the right, under such construction, to extract all the petroleum and other mineral oils in said ground, land, and premises, and that defendants deny the validity of said locations. That complainant, since the 23d day of August, 1898, has been and now is engaged in mining and developing said land, and boring and sinking a well thereon for the production of petroleum and other mineral oils, and has constructed at great expense, and has thereon, a well and other works necessary for and adapted to mining and developing said land for the production of mineral oils. That on the 19th day of October, 1891, said land was a part of the public domain of the United States, unoccupied, and open to location as land containing petroleum and other mineral oils. That on said date J. L. Doyle and seven other persons associated with him, all citizens of the United States, located a mining claim known as the "Lowell Placer Mining Claim" on said land, and caused notice thereof to be duly recorded, and thereafter, to wit, on the 23d day of August, 1898, four of said locators conveyed their interests in said claim to complainant, and the other four of said locators authorized complainant to sink wells and otherwise work upon said land for the production of oil and other mining purposes. That from the date of said location to the commencement of this suit all the requirements of law in relation to placer mining claims have been fully complied with by complainant and its predecessors, and that since the date last named complainant has had and now has the legal title to an undivided one-half of said Lowell placer mining claim, and has been and now is the owner of said undivided one-half, and in the possession of the whole of said Lowell placer mining claim, ground, land, and prem-

ises, and to all the petroleum, mineral oils, and minerals therein contained, and has been and now is entitled to the quiet and peaceable possession of the whole of said ground.   That on the 11th day of August, 1898, W. H. H. Hart and seven other persons associated with him, all citizens of the United States, claiming that under an act of congress entitled "An act to authorize the entry and patenting of lands containing petroleum and other mineral oils under the placer mining laws of the United States," approved February 11, 1897, said land was vacant and unpatented, made a location thereon known as the "Earl Placer Mining Claim," and thereafter, to wit, on the 27th day of August, 1898, conveyed said claim to complainant.   That on the 14th day of June, 1895, Hart H. Barrett and seven other persons associated with him made a pretended location of said land as a placer mining claim, but did not make nor erect any monuments or boundaries on said land, and afterwards conveyed said pretended location to the Producers' & Consumers' Oil Company, a corporation, which corporation afterwards, to wit, in the year 1896, transferred all its right, title, and interest to the defendant Miller, and thereafter a relinquishment of said claim by said Miller was made to and accepted by the United States; and that defendants claim that by said relinquishment said land, so far as concerns the said location of June 14, 1895, was restored to the public domain, which claim is controverted by complainant.   That on the 31st day of December, 1896, Ernest L. Smith and seven other persons associated with him made a pretended location of said land as a placer mining claim under the name of "Sure Shot Group of Placer Mining Claims," but did not erect monuments upon the ground in such manner that the boundaries of said location could be traced.   That at the times of the last two pretended locations the aforesaid Lowell placer mining claim was a valid and subsisting location, and said two pretended locations were and are wholly void.   That on the 31st day of December, 1897, said Ernest L. Smith and his associates conveyed to defendant Miller the aforesaid Sure Shot group of placer mining claims.   That defendant Miller claims ownership of said land by virtue of his conveyance from said Smith and his associates, but that the claim of said Miller to said land is without right or merit, and a cloud upon complainant's title, which depreciates the value of the property, and hinders and delays complainant in its development.   That said Miller claims that the location by said Smith and his associates is a valid and subsisting location because of the provisions of the aforesaid act of February 11, 1897, and that the several locations through which complainant derives title were never made, and that all of said claims are controverted by complainant.   That said Miller contends that the Lowell placer claim was forfeited by failure of the claimants to do the annual work and make the annual expenditures required by law previous to the aforesaid location of December 31, 1896.   That this claim as to the forfeiture of the placer mining location is disputed by complainant, who claims that under said act of February 11, 1897, no assessment work on said land was required, and that the said Lowell placer mining location was and is a prior, legal, adverse claim to said land, which precludes the acquisition of any rights to the same by said de-

fendants, or any other person, adverse to complainant. That complainant contends and insists that no valid claim to said land was ever acquired by defendants, or any or either of them, and that a true construction of said act of congress of February 11, 1897, confirms complainant's title to said land. That the matters in controversy between the complainant and defendants involve the construction of the statutes of the United States relative to locating and holding claims chiefly valuable for petroleum and other mineral oils, prior and subsequent to said act of congress of February 11, 1897, including the question whether or not such land could have been located as a placer mining claim, and, if so, what acts were requisite to such a location prior to the act of February 11, 1897, and also the question whether or not the statute requiring annual expenditure or representation of a mining claim applied to locations of lands chiefly valuable for petroleum or other mineral oils, or held as such previous to said act of February 11, 1897, and also the construction to be given the acts of congress suspending annual assessment work or representation of mining claims for and during the years 1893 and 1894, and also the effect of failure to file the affidavit required by said acts, and each of them, and also the construction of said act of February 11, 1897, as to whether or not land located thereunder is a mining claim under the mining laws of congress, and whether or not said act is curative, and confirms the title to land chiefly valuable for petroleum and other mineral oils under proceedings which had been initiated under the mineral land laws of the United States prior to the said 11th day of February, 1897. That the defendant New York Oil Company pretends that it has a right to mine said land by reason of leases from the defendant Miller, and that, as such pretended lessee, it is now engaged in the business of mining said premises for, and extracting therefrom and converting to its own use, the petroleum and other mineral oils in said land, ground, and premises contained, and that such corporation threatens to, and will, unless restrained by this court, continue to remove, take out, and extract the petroleum and other mineral oils in said ground, land, and premises contained, to the great and irreparable injury of complainant. That the defendant Miller has not now, nor has he ever had, any right to lease said land to his co-defendant, or to any person whomsoever, and that the claims and pretensions of said defendant corporation are without any right whatever. That on the 29th day of August, 1898, defendants, against the will and without the consent of complainant, entered upon said land, and then and thereafter, for the purpose of extracting the petroleum and other mineral oils therein contained, cut, made, and excavated, sunk and bored, and are now sinking and boring, a well into and under said land, to wit, the strip of land hereinafter described, and ever since said last-mentioned day have intruded and trespassed upon said land, and have extracted, taken out, and removed therefrom, and converted to their own use, petroleum and other mineral oils, and threaten, and, unless restrained by this court, will continue, to intrude and trespass upon said land, and extend said well, and make further cuts and excavations, and sink and bore other wells in said land, for the purpose of extracting petroleum and other

mineral oils therefrom, and will continue to extract, take out, and remove from said land, and convert to their own use, petroleum and other mineral oils, to the value of $2,000 and upward, and thereby take from said land the entire value thereof, to the great and irreparable injury of complainant; and that defendants threaten, and will, unless restrained by this court, prevent complainant from developing and producing oil upon and from said land, and will expel from said land complainant and its agent and employés. That said trespasses are confined solely to a strip of land near the southwest corner of said quarter section, about 50 feet wide and 100 feet long, and that defendants are sinking the well aforesaid and maintaining a boring outfit for that purpose on said strip of land, and maintaining a pipe line across a portion of said land, through which defendants carry water and oil for fuel to said boring machinery, and that defendants threaten, and will, unless restrained by this court, sink and cause to be sunk other wells upon other portions of said southwest quarter, and expel by force complainant and its agents therefrom, and prevent complainant from selling and disposing of the oils produced on said southwest quarter.

The present hearing is on an application for a temporary injunction, which application defendants resist by exceptions to the bill, under rule 67 of this court, hereinafter quoted, by a motion to dismiss said bill on the ground that the superior court of the state of California in and for said county of Fresno first acquired jurisdiction of the litigation, and by affidavits to the merits. The rule of court above referred to is as follows:

"Rule 67. On a motion for an injunction, the defendant may show cause against its allowance, either by plea, answer, or demurrer to the bill, or by parol exception to its legal sufficiency, or by depositions and affidavits disproving the equity on which the motion is founded."

Defendants' exceptions to the bill are: First, that the case is not within the jurisdiction of this court; second, that the bill shows defendants to be in possession of the property in controversy, and therefore a suit to quiet title cannot be maintained against them.

1. Complainant being a corporation organized in the territory of Arizona, there is no diverse citizenship (1 Fost. Fed. Prac. § 19; Corporation of New Orleans v. Winter, 1 Wheat. 91; Barney v. Baltimore City, 6 Wall. 280; Johnson v. Bunker Hill & S. M. & C. Co., 46 Fed. 417), but it is contended on behalf of complainant that this court has cognizance of the case because it involves a federal question; that is, arises under the laws of the United States. Two things are necessary to the existence of a federal question: First, an actual dispute between the parties as to the meaning of some law of the United States; second, materiality of the construction of such law to a determination of the cause. These two constituents have been succinctly stated thus:

"A cause is not removable simply because in its progress it may become necessary to construe or apply an act of congress. Unless there is a dispute between the parties as to the meaning of the act, there is no federal controversy between them. The decision of the case, or some material issue in it, must depend upon the construction of the act claimed by one party and denied by the other. A simple averment that such is the fact is stating a conclusion,

and is not sufficient; the facts that show it to be true must be set out." Fitzgerald v. Railway Co., 45 Fed. 812; State v. Chicago, M. & St. P. Ry. Co., 33 Fed. 394.

See, also, Water Co. v. Keyes, 96 U. S. 199; Gibbs v. Crandall, 120 U. S. 106, 7 Sup. Ct. 497; Metcalf v. Watertown, 128 U. S. 589, 9 Sup. Ct. 173; City of New Orleans v. Benjamin, 153 U. S. 411, 14 Sup. Ct. 905.

All except the last of the citations in this paragraph are cases of removal, but the requirements, so far as concerns the federal question which authorizes a removal, are the same as those which confer original jurisdiction. Section 1 of each of three acts of congress below and in this paragraph named gives to the circuit courts of the United States "original cognizance * * * of all suits of a civil nature * * * arising under the constitution or laws of the United States." Section 2 of the act of congress of March 3, 1875, in one of its clauses (18 U. S. Stat. 470) provides for the removal of any suit "arising under the constitution or laws of the United States." The clause above referred to, as amended by the act of March 3, 1887 (24 U. S. Stat. 552), and corrected by the act of August 13, 1888 (25 U. S. Stat. 433), authorizes the removal of any suit "of which the circuit courts of the United States are given original jurisdiction" by section 1 of said last-named act, which section confers original jurisdiction upon the circuit courts "of all suits * * * arising under the constitution or laws of the United States." 25 U. S. Stat. 434. Where there is no dispute between the parties as to the meaning of any federal law, but the case involves issues of fact solely,—as, for instance, which of two mining locations was first made, or whether or not the boundaries of either were marked upon the ground, or whether or not assessment work has been performed,—the case is not one arising under the constitution or a law or treaty of the United States, although the respective interests or titles of the parties may be derived through such constitution, law, or treaty. Bushnell v. Smelting Co., 148 U. S. 682, 13 Sup. Ct. 771; Budzisz v. Steel Co., 170 U. S. 41, 18 Sup. Ct. 503; Theurkauf v. Ireland, 27 Fed. 769; Holland v. Hyde, 41 Fed. 897; Mining Co. v. Kinney, 46 Fed. 832; Mining Co. v. Woody, 50 Fed. 633; Argonaut Min. Co. v. Kennedy Mining & Milling Co., 84 Fed. 1; King v. Lawson, Id. 209; Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 29 C. C. A. 462, 85 Fed. 867; St. Paul, M. & M. Ry. Co. v. St. Paul & N. P. R. Co., 15 C. C. A. 167, 68 Fed. 2; Crystal Springs Land & Water Co. v. City of Los Angeles, 76 Fed. 148; Crystal Springs Land & Water Co. v. City of Los Angeles, 82 Fed. 114. In this last case the first paragraph of the syllabus is as follows:

"When both parties claim under Mexican grants, confirmed and patented by the United States in accordance with the provisions of the treaty of Guadalupe Hidalgo, and the controversy is only as to what were the rights thus granted and confirmed, the suit is not one arising under said treaty, so as to confer jurisdiction on a federal court."

While some of the cases cited in the preceding paragraph were on writs of error to state courts, yet, in determining when there is a federal question, such cases are equally instructive with those

originally brought in circuit courts. Railway v. Taylor, 86 Fed. 168. An action brought pursuant to sections 2325, 2326, Rev. St. U. S., where patent has been applied for, and adverse claim filed, is said to be an apparent exception to the rule above stated as to the essentials of a federal question. Mining Co. v. Kinney, supra. See, also, Rutter v. Mining Co., 75 Fed. 37; Mining Co. v. Rutter, 31 C. C. A. 223, 87 Fed. 801; Doe v. Mining Co., 43 Fed. 219; Bennett v. Harkrader, 158 U. S. 441, 15 Sup. Ct. 863; Chambers v. Harrington, 111 U. S. 350, 4 Sup. Ct. 428; Perego v. Dodge, 163 U. S. 160, 16 Sup. Ct. 971; 2 Lindl. Mines, § 748. These cases are, perhaps, sustainable on either one of the following theories: First. That the suit referred to in said section is but one step in a purely statutory procedure, which has its inception, not in the court, in which the suit is brought, but in the land office. Doe v. Mining Co., supra. Second. Said section 2326, Rev. St., provides, among other things, that "it shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim." It cannot be supposed that congress would subject the adverse claimant to forfeiture of his interest by reason of failure to institute suit, without providing a tribunal in which such claimant could sue as a matter of right. Now, since congress is powerless to confer jurisdiction on a state court, the presumption is a fair, if not necessary, one that said statute confers jurisdiction on federal courts. But this inquiry need not be pursued further, since the case at bar is not a suit brought under said sections 2325, 2326, Id. Before inquiring as to whether or not the two essentials above named to a federal question, namely, a dispute as to the meaning of a federal law and its materiality to a determination of the cause, are found in the present case, it is needful to determine in what way said essentials must be made to appear. On this point the authorities are now agreed that the federal question must be presented by the plaintiff's own statement of his claim; that is, "a statement of facts 'in legal and logical form,' such as is required in good pleading," showing the plaintiff's cause of action, without regard to what may be the contentions or claims of the defendant. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34; Postal Tel. Cable Co. v. Alabama, 155 U. S. 484, 15 Sup. Ct. 192; Railway Co. v. Skottowe, 162 U. S. 490, 16 Sup. Ct. 869; Wise v. Nixon, 76 Fed. 3, 78 Fed. 203; Kansas v. Atchison, T. & S. F. Ry. Co., 77 Fed. 339; Mining Co. v. Miller, 96 Fed. 1. This last citation is an opinion by Judge Ross, recently delivered in this court, sustaining a demurrer to a bill, whose allegations were quite similar to the allegations of the bill in the case at bar.

When the pending matters were argued orally before me, I made the suggestion that in a suit to quiet title, such as the one at bar, the particular claims or contentions of defendants might possibly be parts of complainant's case. Subsequent reflection convinces me that my suggestion was without merit, and that the complainant need

not do more than allege his own title and that the defendant claims adversely to him. The nature of the adverse claim, and source and manner from and in which it originated, are immaterial. If such matters are alleged in the bill, they must be disregarded in determining the jurisdictional question, not merely because of their immateriality, but for the further and obvious reason that defendants may not, in their answer, make the claims or contentions which the bill anticipates. The possibility, or even probability, that a federal question may arise during the progress of a cause will not support original jurisdiction in the circuit court, but the plaintiff's statement of his own claim must show that such a question is necessarily involved, and must be determined. If the defendants should fail to answer, and the bill be taken pro confesso, the decree entered by the court would quiet complainant's title against all claims of the defendants. If the defendants should answer, and set up claims other than those attributed to them by the bill, the answer certainly would be good. Should the defendants, in their answer, simply deny that they assert the claims alleged in the bill, the answer would be bad, because implying that some other adverse title was asserted. If the defendants should deny that they ever asserted any title prior to the commencement of the suit, such denial would not present a material issue. These suppositions show that the only material allegation relating to the defendant is as above stated, that the defendant claims the property adversely to the complainant; and this conclusion is in harmony with the rulings of the supreme court of California, construing sections 738 and 739 of the Code of Civil Procedure of said state. Bulwer Con. Min. Co. v. Standard Con. Min. Co., 83 Cal. 589, 23 Pac. 1102; Castro v. Barry, 79 Cal. 443, 21 Pac. 946.

In Bulwer Con. Min. Co. v. Standard Con. Min. Co., supra, the court said (italics mine):

"Counsel for appellant claim that the findings of fact do not support the conclusions of law or the judgment 'in that there is no finding to the effect that the defendant asserted a claim adverse to plaintiff to any part of the property described in the complaint, as to the ledge in dispute, before the commencement of the action,' and hence concludes that 'the judgment should be against the plaintiff and in favor of the defendant.' But, as above shown, this conclusion does not follow, even if it is true that there is no such finding. Conceding that the averment of an adverse claim is necessary in a complaint to quiet title under section 738 of the Code of Civil Procedure, yet if the defendant, in his answer, claim an adverse interest or estate in the land described in the complaint, a denial that he has made such adverse claim before the commencement of the action would be immaterial. If, on the other hand, the defendant, as here, *expressly disclaim any estate or interest in the land described in the complaint*, and at the same time *denies that he ever made any such adverse claim*, the plaintiff would still be entitled to a decree quieting his title, but without costs. This is implied in section 739 of the Code of Civil Procedure. The object of sections 738 and 739 is to enable the plaintiff, in such action, to dispel whatever may be regarded by third persons, as well as by the defendant, as a cloud upon his title; for *even though the defendant makes no adverse claim*, third persons may regard plaintiff's title as being subject to an adverse claim by the defendant, which would be a cloud upon plaintiff's title, depreciating its value, and which he would be entitled to have removed by the decree of the court; so that his record title may appear perfect, not only to the defendant, but to all persons whom it may thereafter concern. *The only purpose of the averment of an adverse claim is to notify the defendant of*

*the nature of the action, and that he is required to set forth and litigate any adverse title he may claim, or to disclaim any such adverse title, either expressly or by default. * * * The only material issues tendered by a complaint in this class of cases relate to the title of the real property described in the complaint. Therefore there was no necessity for a finding upon the formal, but immaterial, issue as to whether the defendant had asserted an adverse title before the commencement of the action."*

In Castro v. Barry, supra, the court said (italics mine):

"The statutory action to determine an adverse claim is an improvement upon the old bill of peace. The statute enlarges the class of cases in which equitable relief could formerly be sought in the quieting of title. It is not necessary, as formerly, that the plaintiff should first establish his right by an action at law. 'He can immediately, upon knowledge of the assertion of such claim, require the nature and character of the adverse estate or interest to be produced, exposed, and judicially determined, and the question of title to be thus forever quieted.' Curtis v. Sutter, 15 Cal. 262, 263; and see Stark v. Starrs, 6 Wall. 409. *Nor is it necessary that the adverse claim should be of any particular character.* As said by Baldwin, J., delivering the opinion in Head v. Fordyce, 17 Cal. 151, the statute 'does not confine the remedy to the case of an adverse claimant setting up a legal title, or even an equitable one; but the act intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held, or to grow out of the adverse pretention.' See, also, Horn v. Jones, 28 Cal. 214; Joyce v. McAvoy, 31 Cal. 287, 288. And the rule may be even more broadly stated, viz. that the action may be maintained by the owner of property to determine any adverse claim whatever. *For if the defendant, by his answer, disclaims all interest whatever,* judgment may, nevertheless, be entered against him, though in such case it must be without costs. Code Civ. Proc. § 739. Compare Brooks v. Calderwood, 34 Cal. 566, and Mining Co. v. Marsano, 10 Nev. 380, 381. The plaintiff, therefore, is not required to set forth the nature of the defendant's claim. People v. Center, 66 Cal. 552, 5 Pac. 263, and 6 Pac. 481; Mining Co. v. Marsano, 10 Nev. 380, 381; Railroad v. Oyler, 60 Ind. 392. The pleading is very simple. And it is well settled that the allegations above mentioned are sufficient. Rough v. Simmons, 65 Cal. 227, 3 Pac. 804; Heeser v. Miller, 77 Cal. 192, 19 Pac. 375."

Assuming that complainant in the present suit relies on sections 738 and 739 of the Code of Civil Procedure of California, the above-quoted decisions from the supreme court of said state, construing said sections, are binding on this court (Fost. Fed. Prac. § 375, and notes; Nobles v. Georgia, 168 U. S. 398, 18 Sup. Ct. 87), and I make the assumption indicated for the reason that equitable remedies given by the statutes of a state may be administered, under certain circumstances, in a federal court (Davidson v. Calkins, 92 Fed. 230; Clark v. Smith, 13 Pet. 195; Chapman v. Brewer, 114 U. S. 158, 5 Sup. Ct. 799; Bardon v. Improvement Co., 157 U. S. 327, 15 Sup. Ct. 650); and the bill, without such statutory aid, is open to objection on the ground of its failure to show that the possession of complainant has been disturbed by legal proceedings on the part of the defendants. Referring to a statute of the state of Oregon similar to that of California, the supreme court of the United States has said:

"This statute confers a jurisdiction beyond that ordinarily exercised by courts of equity to afford relief in the quieting of title and possession of real property. By the ordinary jurisdiction of those courts a suit would not lie for that purpose unless the possession of the plaintiff had been previously disturbed by legal proceedings on the part of the defendant, and the right of the plaintiff had been sustained by successive judgments in his favor." Stark v. Starrs, 6 Wall. 402.

As suggested by defendants in their brief, any attempt on the part of the complainant in a suit to quiet title to anticipate the nature of defendants' adverse claim is mere waste of words, as the defendants have the right to set up any claim or title or defense they may see proper, whether such claim, title, or defense is anticipated by the bill or not.

Eliminating from the bill in the case at bar all allegations relative to the claims and contentions of defendants, there remain only allegations of the sources of complainant's ownership; and it is manifest that these allegations alone do not show any dispute between the parties as to the meaning of a federal law. Indeed, the simple statement by a plaintiff of his claim can seldom present a federal question, for the reason that a dispute as to the meaning of a federal law, or in regard to any other matter, can arise only when there are conflicting claims of two or more parties, and not out of the mere presentation of the claim of one party. Suppose that defendants should hereafter file an answer admitting complainant's ownership of the property in controversy at some prior date, but claiming said property by virtue of an alleged transfer from complainant to themselves, or that they should simply deny that the boundaries of the Lowell placer mining claim had ever been marked upon the ground, or that any assessment work had been done under said claim,—would an issue be thereby raised as to the construction of any law of the United States? Surely not. These views are substantially, but clearly, expressed in New Orleans v. Benjamin, supra, where the court says:

"When a suit does not really and substantially involve a dispute or controversy as to the effect or construction of the constitution, upon the determination of which the result depends, then it is not a suit arising under the constitution. Shreveport v. Cole, 129 U. S. 36, 9 Sup. Ct. 210; Starin v. City of New York, 115 U. S. 248, 6 Sup. Ct. 28; Water Co. v. Keyes, 96 U. S. 199. The judicial power extends to all cases in law and equity arising under the constitution, but these are cases actually, and not potentially, arising, and jurisdiction cannot be assumed on mere hypothesis. In this class of cases it is necessary to the exercise of original jurisdiction by the circuit court that the cause of action should depend upon the construction and application of the constitution, and it is readily seen that cases in that predicament must be rare. Ordinarily, the question of the repugnancy of a state statute to the impairment clause of the constitution is to be passed upon by the state courts in the first instance, the presumption being in all cases that they will do what the constitution and laws of the United States require (Chicago & A. R. Co. v. Wiggins Ferry Co., 108 U. S. 18, 1 Sup. Ct. 614, 617); and, if there be ground for complaint of their decision, the remedy is by writ of error under section 709 of the Revised Statutes."

Crystal Springs Land & Water Co. v. City of Los Angeles, 76 Fed. 148, is one of the class of cases said by Mr. Chief Justice Fuller in City of New Orleans v. Benjamin, supra, to be rare, where the circuit court of the United States has original jurisdiction by reason of the case arising under the constitution and laws of the United States. In that case (Crystal Springs Land & Water Co. v. City of Los Angeles, supra), which was decided by the writer of this opinion, the rule now under consideration, that jurisdiction must appear from plaintiff's own statement of his claim, was not invoked by the defendant, but it was assumed by both parties in their briefs that in determining the question of jurisdiction the court in that case could look to all the

allegations of the bill, including the claims of the defendant as well as those of the plaintiff; and therefore the precise ground on which the jurisdiction in that case is sustainable does not appear in the opinion of the court, nor, indeed, was it considered by me at the time.    That the decision was correct, however, is fully shown by a review of the case made in the brief of the defendants in the case at bar, the substance of which review is as follows:

Section 1979, Rev. St., provides that "every person, who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the constitution and laws, shall be liable to the party injured, in an action at law, suit in equity, or other proper proceeding."

By subdivision 16, § 629, of the Revised Statutes of the United States, the circuit courts were given jurisdiction "of all suits authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage of any state, of any right, privilege, or immunity, secured by the constitution of the United States, or of any right secured by any law providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States." This subdivision was not expressly re-enacted in the act of congress approved March 3, 1875, entitled "An act to determine the jurisdiction of circuit courts of the United States, and to regulate the removal of causes from state courts, and for other purposes," but the cases which said subdivision describes are evidently included in the general classification of the first section of said act, namely, "all suits of a civil nature * * * arising under the constitution or laws of the United States, or treaties made or to be made, under their authority." The fifth section of the act of March 3, 1887, amendatory of the aforesaid act of March 3, 1875 (24 U. S. Stat. 552), and also the fifth section of the act of August 13, 1888, correcting the enrollment of the last-mentioned act of March 3, 1887 (25 U. S. Stat. 433), provide "that nothing in this act shall be held, deemed, or construed to repeal or affect any jurisdiction or right mentioned * * * in title twenty-four of the Revised Statutes of the United States." Said title 24 embraces section 1979, above quoted. The liability declared in said section 1979 for depriving a person of rights, privileges, or immunities secured by the constitution and laws of the United States manifestly depends upon the fact that such deprivation be under color of some statute, ordinance, etc., of a state or territory; and therefore, to constitute a cause of action under said section, the plaintiff must show, as part of his case, that the defendant claims to act under color of a statute, ordinance, etc., of a state or territory. In Crystal Springs Land & Water Co. v. City of Los Angeles, supra, the bill alleged that the defendant claimed, under a grant from the state of California, property belonging to the complainants, and that said grant was repugnant to section 10, art. 1, of the constitution of the United States, providing that no state shall pass any law impairing the obligation of contracts, and the provision of section 1 of the fourteenth amendment to said

constitution, that no state shall deprive any person of life, liberty, or property without due process of law; thus making out a case of the deprivation of property under color of state law, within the meaning of said section 1979. Hence, in that case, defendant's claims and acts, and that they were made and done under color of the statutes of California, were parts of, and essential to, the statement of plaintiffs' claim. These peculiarities of said case clearly distinguish it from Tennessee v. Union & Planters' Bank and the subsequent cases in line therewith, and it was probably for this reason that the city of Los Angeles did not, in its brief, invoke or refer to the line of authorities last mentioned. See, also, Michigan Tel. Co. v. City of Charlotte, 93 Fed. 11.

In a brief filed herein by Mr. Joseph H. Call, as amicus curiæ, it is suggested, among other things, that "a case in law or equity consists of the right of one party as well as of the other," and therefore the allegations of the bill in reference to the claims and contentions of the defendants should be considered in determining the question of jurisdiction; citing, among other cases, New Orleans M. & T. R. Co. v. Mississippi, 102 U. S. 135. When these cases were decided, jurisdiction on removal existed if a federal question appeared anywhere in the record. Under the law, however, as settled by the decision in Tennessee v. Union & Planters' Bank, supra, whatever may or may not be essential to jurisdiction on removal, it is certain that original jurisdiction does not exist in the circuit court unless the federal question be raised by the plaintiff's statement of his own claim. If, in a suit brought in a state court, a federal question material to the cause, and belonging to any one of the classes described in section 709, Rev. St. U. S., arises subsequent to the filing of the bill, that fact gives to the supreme court of the United States jurisdiction on writ of error; but, as already stated, the original jurisdiction of the circuit court depends upon the facts as they exist at the commencement of the suit, and as they are then made to appear by the plaintiff's statement of his own claim. These remarks dispose of all the cases cited by Mr. Call in this connection except City Railway Co. v. Citizens' R. Co., 166 U. S. 557, 17 Sup. Ct. 653, and Railway Co. v. Ziegler, 167 U. S. 65, 17 Sup. Ct. 728. These two cases belong to the same class as Crystal Springs Land & Water Co. v. City of Los Angeles, supra, and, as I have shown in reference to the last-named case, do not militate against, but are in harmony with, the views herein expressed. For the reason that a dispute between the parties as to the construction of laws of the United States appears only by the aid of allegations in regard to the claims of defendants, which are not essential to complainant's case, or, to use the phraseology commonly employed in the authorities cited, because the federal question does not appear from complainant's own statement of his claim, it must be held that this court is without jurisdiction of the cause.

2. The other exception to the bill, I think, is also well taken, and, if a federal question were actually involved, the bill could not be maintained, for the reason that it shows defendants to be in possession of the property in controversy. It is true that the bill does

not, in terms, allege that the defendants are in possession, but the acts charged against the defendants are such as necessarily imply actual possession or occupancy of the land. The allegations of the bill on this point are as follows:

"And your orator further shows unto your honors and avers that hitherto, and on or about the 29th day of August, 1898, the said defendants and their agents, servants, employés, and confederates forcibly and willfully, against the will and without the consent of your orator, entered in and upon the said ground, lands, and premises hereinabove described, and commenced to, and then and thereafter, for the purposes of extracting the petroleum and other mineral oils therein contained, cut, made, and excavated, sunk and bored, and are now sinking and boring, a well into and under and upon said ground, lands, and premises, to wit, on the strip of land hereinafter described, and ever since said last-mentioned day have intruded and trespassed upon said ground, and have extracted, taken out, and removed from said ground, lands, and premises, and converted to their own use, petroleum and other mineral oils therein, to the value and amount unknown to your orator."

### In Erskine v. Oil Co., 80 Fed. 583, the court says:

"While the bill does not, in words, pray to acquire possession of the wells, yet, in substance and effect, that is its purpose. It seeks to restrain respondent from operating the wells or taking the oil, and these acts are, where oil and gas are concerned, the essential attributes of possession. The supreme court of Pennsylvania, in the case of Gas Co. v. De Witt, 130 Pa. St. 250, 18 Atl. 724, after discussing the peculiar character of gas and oil and their production, say: 'The one who controls the gas [the subject-matter of the case before it] has it in his grasp, so to speak; is the one who has possession in the legal as well as in the ordinary sense of the word.' A bill, then, which in substance would deprive one in possession of everything which constitutes possession, whatever it is in name, is in fact one to devest possession, or what is known as an 'ejectment bill.' In Messimer's Appeal, 92 Pa. St. 169, a bill was filed by parties claiming an undivided fourth in an oil lease and well against parties in possession. The respondent admitted complainants' title to an undivided eighth, and denied it as to the other eighth. Complainants did not ask to restrain respondent from operating the well, but prayed for a receiver and an accounting. In sustaining a decree dismissing the bill for want of grounds for equitable relief the court say: 'The case presented on bill and answer is simply the ordinary case of property claimed by one party (plaintiff) in the possession of another party (defendant). It is a mere ejectment bill, and there is nothing to give a court of equity jurisdiction.' Such conclusion is in accord with other Pennsylvania cases. See Long's Appeal, 92 Pa. St. 179; Coal Co. v. Snowden, 42 Pa. St. 488; Gloninger v. Hazard, Id. 389. In the federal courts the line between law and equity, and consequently between legal and equitable rights and remedies, has been sharply defined, and strictly observed. The provision of the constitution vesting judicial powers 'in cases in law and equity * * * between citizens of different states' recognizes the distinction. A constitutional amendment insures the right of trial by jury 'in suits at common law when the value in controversy shall exceed twenty dollars,' and the sixteenth section of the judiciary act of 1789 provides 'that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law.' And to such length have these provisions been extended that it has been held (Allen v. Car Co., 139 U. S. 662, 11 Sup. Ct. 682): 'If the court, in looking at the proofs, found none of the matters which would make a proper case for equity, it would be the duty of the court to recognize the fact, and give it effect, though not raised by the pleadings, nor suggested by counsel.' And rightly so, for we are here dealing with the constitutional right of the citizen, and, as was said by Mr. Justice Campbell in Hipp v. Babin, 19 How. 278, 'whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury.'"

I have heretofore had occasion to pass upon the question now under consideration, and, after careful review of the authorities, decided that a suit to quiet title could not be maintained in the federal courts against a defendant in possession, although such a suit might be authorized by state law. Davidson v. Calkins, 92 Fed. 230. See, also, Morrison v. Marker, 93 Fed. 692.

The motion for a temporary injunction is denied, and the restraining order heretofore made vacated.